UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RONALD D. WAYNE CLARK, JR.,

                Petitioner,

v.                                Case No. 3:10-cv-547-J-39PDB

SECRETARY, FLA. DEP'T
OF CORR., et al.,

                Respondents.

_____

**ORDER**

**I. Status**

Petitioner Ronald D. Wayne Clark, Jr., who is represented by counsel,[1] filed a Petition for Writ of Habeas Corpus (Petition) (Doc. 26) pursuant to 28 U.S.C. § 2254 and a Memorandum of Law in Support of Habeas Corpus Petition (Memorandum) (Doc. 27) on April

---

[1] Mr. Harry P. Brody, Esquire, represented Petitioner in his state post-conviction proceedings. Neither Mr. Brody nor Petitioner expressed a desire to have Mr. Brody appointed to represent Petitioner in his federal habeas proceedings. See Order (Doc. 16). Although Petitioner expressed some desire to proceed pro se, the Court appointed Mr. Martin J. McClain, Esquire, and Ms. Linda McDermott, Esquire, to represent Petitioner for the limited purpose of advising Petitioner in deciding whether he would like to continue to proceed pro se. See id. Thereafter, counsel notified the Court that Petitioner desired to have Mr. McClain and Ms. McDermott represent him throughout his proceedings in federal court. See Notice to Court (Doc. 20). On August 27, 2010, the Court appointed Mr. McClain and Ms. McDermott to represent Petitioner. See Order (Doc. 22).

28, 2011.   He also filed an Appendix (Appendix) (Doc. 30).[2]
Petitioner challenges a 1991 state court (Duval County, Florida)
judgment of conviction for first degree murder and armed robbery.
Respondents have submitted a memorandum in opposition to the
Petition, see Respondents' Response to Order to Show Cause Why a
Writ of Habeas Corpus Should Not be Granted (Response) (Doc. 36),
and Respondents' Habeas Corpus Checklist [Exhibits] (Doc. 39).[3]
Petitioner submitted a brief in reply on November 16, 2011.   See
Petitioner's Reply to Response to Order to Show Cause Why a Writ of
Habeas Corpus Should Not be Granted (Reply) (Doc. 48).

        The Court, on August 24, 2012, granted Petitioner's Motion to
Submit Supplemental Briefing on Martinez v. Ryan.[4]   See Order (Doc.
51).   Thereafter, Petitioner filed a Supplement to Petition for
Writ of Habeas Corpus (Doc. 52), and Respondents filed a Response
to Petitioner's Supplement to Petition for Writ of Habeas Corpus
(Doc. 53).

        The Court has considered all of the above and finds the case
ripe for review as presented by counsel for Petitioner.   Thus, the

---

        [2] The Court will refer to Petitioner's Appendices as "App."

        [3] The Court will refer to Respondents' Exhibits as "Ex."   The
Court will refer to the exhibits as numbered by Respondents, even
though the numerical exhibits are not always sequential.   Also, in
some instances, there is more than one exhibit labeled with the
same number.

        [4] Martinez v. Ryan, 132 S.Ct. 1309 (2012).

claims raised in the Petition will be addressed by the Court. The claims are:

**GROUND ONE:** Petitioner was denied the effective assistance of counsel at the penalty phase of his trial, contrary to the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

**GROUND TWO:** The trial court erred in failing to properly evaluate, consider, find, and weigh mitigating factors.

**GROUND THREE:** The trial court erred in allowing the state to present the facts of Petitioner's prior murder conviction during the penalty phase solely through hearsay testimony of the lead police investigator.

**GROUND FOUR:** Petitioner was deprived of his rights to due process under the Fourteenth Amendment to the United States Constitution, as well as his rights under the Fifth, Sixth, and Eighth Amendments, because the state withheld material, exculpatory evidence, and/or presented misleading evidence.

**GROUND FIVE:** Petitioner was denied the effective assistance of counsel at the guilt phase of his trial, in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

**GROUND SIX:** Newly discovered evidence establishes that Petitioner's death sentence stands in violation of the Eighth Amendment to the United States Constitution, which prohibits the arbitrary or irrational imposition of the death penalty.

**GROUND SEVEN:** Petitioner was denied the right to a fair and impartial judge during his postconviction proceedings, in violation of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

## II.  Procedural History

Petitioner was booked by the Office of Sheriff, Jacksonville, Florida, on February 16, 1990, for the offense of murder.  Ex. 0 at 1-2.[5]  The trial court allowed the Public Defender to withdraw, and appointed Henry E. Davis, Esquire, as counsel for Petitioner.[6]  Id. at 5.  On February 23, 1990, Petitioner was charged by information with second degree murder and armed robbery.  Id. at 12-13.  On March 22, 1990, by indictment, Petitioner was charged with murder in the first degree and armed robbery with a firearm.  Id. at 20-22.

Petitioner, on April 3, 1990, filed a Notice of Intent to Rely on Defense of Insanity at Trial.  Id. at 23.  He also filed a Motion for Examination into the Defendant's Competence.  Id. at 24-26.  The motion stated that Petitioner is twenty-one years old and charged with first degree murder and armed robbery.  Id. at 24.  It

---

[5] Respondents failed to include an index tab for the initial portion of the record.  For the convenience of the reader, the Court will refer to this portion of the record as Ex. "0."

[6] Mr. Davis is not related to the undersigned.  In this opinion, the Honorable Henry E. Davis will be referred to as Mr. Davis, like in the state court record; however, the Court recognizes that he is currently a state circuit court judge.

alleged that he suffers from mood swings, engages in self-mutilation, and made attempts to commit suicide. <u>Id</u>. at 24-25. The motion related that Petitioner has a history of alcohol and drug abuse dating back to the age of six years old. <u>Id</u>. at 25. It stated that Petitioner received mood altering medication in the Duval County Jail. <u>Id</u>. The motion noted that Petitioner's parents may suffer with psychiatric disorders. <u>Id</u>. It also mentioned that he did not receive any significant mental health treatment even though Dr. Manuel M. Chaknis, Ph.D., a Licensed Clinical Psychologist, recommended secure, inpatient treatment on February 7, 1986. <u>Id</u>. Counsel explained that based on his conversations with his client, he had "reason to believe that the Defendant may not be competent to stand trial and that he may have been insane at the time of the offenses alleged in the indictment filed against him." <u>Id</u>. at 25-26.

On April 10, 1990, the state filed a Motion for Psychiatric Examination, requesting that the trial court appoint two experts to examine Petitioner as to his sanity or insanity at the time of the alleged offense. <u>Id</u>. at 29. The court appointed Dr. Ernest Miller, M.D., to examine Petitioner as to his sanity or insanity at the time of the offense. <u>Id</u>. at 32-33. The court appointed Peter M. Macaluso, M.D., to examine Petitioner in order to aid counsel in preparation of the defense. <u>Id</u>. at 34-35.

The record also shows the following.  On April 19, 1990, in a pretrial proceeding, Mr. Davis informed the court that he had spoken with a licensed clinical psychologist, Dr. Chakinin [sic], who examined Petitioner back in 1985.  Ex. 19, Transcript of April 19, 1990 at 12-13.  Counsel notified the court that he would be asking the court to appoint a psychiatrist, but he also wanted the appointment of an individual familiar with Petitioner's history. Id. at 13.  Counsel stated: "It's a very unusual case and I think it will take some time."  Id.  The state informed the court that it was going to try the Nassau County case first, as it happened first.  Id. at 20.

On May 16, 1990, Petitioner filed Defendant's Reciprocal Discovery Response listing witnesses that may offer testimony and other evidence at trial, including Petitioner's mother, Shirley Ann Clark; a number of medical professionals and records custodians; Petitioner's father, Ronald Clark, Sr.; and Petitioner's step-mother, Francis Clark.  Ex. O at 36-37.  Petitioner also filed a Motion to Appoint Second Expert to Examine the Defendant as to Competency.  Id. at 40-41.  The court appointed George W. Barnard, M.D., to address questions of Petitioner's sanity at the time of the alleged offense and his competency to proceed.  Id. at 44-47. Petitioner submitted a Motion for Authority to Incur Expenses for the depositions of Missy Hatch, Vincent Quann, Gary Moody, Bobby

Willis, Debra Willis, Tommy Hatch, Joline D. Wescott, Mecca Bailey and Don Lee.  Id. at 51-52.

In his June 12, 1990 report, Dr. Miller found Petitioner's functioning to be in the borderline to dull normal intellectual range.  Ex. O at 56.  Under clinical impression, Dr. Miller wrote Substance Abuse Disorder, Alcohol/Drug; Chronic Dysthymic Disorder; and Personality Disorder (passive/aggressive/sociopathic).  Id. at 57.  He concluded:

> Addressing your specific questions, it is my opinion the patient at present merits adjudication of competence to proceed and does not meet the criteria for commitment.  I am also likewise of the opinion at the time of the alleged crime the patient was not insane but able to understand the nature, quality and wrongfulness of his acts.
>
> The antecedents for the patient's personality disturbance, chronic depression, and drug addiction seem evident in history as provided. Summary mediation of these problems could be anticipated with appropriate care.

Id.

Dr. Macaluso, in his July 18, 1990 report, noted that his examination and evaluation were for the purpose of determining whether Petitioner suffers from the Disease of Chemical Dependency, whether Petitioner was intoxicated at the time of the offense, and if intoxicated at that time of the offense, what effect it had on his mental state.  Id. at 63.  Dr. Macaluso undertook an extensive review of documents.  Id.  He also undertook a personal evaluation of Petitioner on July 10, 1990.  Id.  He found Petitioner to be

7

taking Prozac and Thorazine for treatment of depression while incarcerated. Id. at 64. He noted that at the time of the offense, Petitioner used alcohol and drugs throughout the night and early morning hours. Id. at 65. He provided an opinion that Petitioner suffers from the Disease of Chemical Dependency, and that he suffered from the disease at the time of the offense. Id. at 67. He stated that Petitioner is poly-drug addicted. Id. He opined that Petitioner's disease "was so severely advanced at the time of the offense as to produce significant decreases of judgment, perception and insight along with global cognitive impairment." Id. Dr. Macaluso found Petitioner suffers from Post Traumatic Stress Syndrome as a direct result of physical and sexual abuse. Id. at 68. He further found that at the time of the offense, Petitioner was in a state of involuntary intoxication. Id.

Dr. Macaluso opined that the combination of Petitioner's Disease of Chemical Dependency in conjunction with severe intoxication, sleep deprivation, paranoid delusional thinking, Post Traumatic Stress Disorder, and Idiosyncratic Alcohol Intoxication Disorder caused him to be unable to plan and formulate goals and formulate the specific intent to commit first degree murder. Id. He further opined that Petitioner lacked the capacity to appreciate the criminality of his conduct or to conform his conduct to the standards of the law. Id. at 69. He concluded that Petitioner was

suffering from an extreme mental and emotional disturbance at the time of the incident. Id. Dr. Macaluso found this condition rendered Petitioner substantially incapable of conforming his conduct to the standards of the law at the time of the offense. Id. Also, he said Petitioner was "incapable of appreciating the long term consequences of his actions and was lacking the capacity to appreciate the criminality of his conduct or to conform his conduct to the standards of the law." Id. Dr. Macaluso stated that Petitioner was unable to commit a cold, calculated and premeditated crime because he was unable to plan, formulate goals, or formulate specific intent. Id. Petitioner was found to be suffering from severe depression. Id. Dr. Macaluso concluded that if Petitioner received two years of intensive inpatient treatment followed by extensive aftercare for two to four years, he would make excellent progress to a full recovery. Id.

The state filed a Notice of Other Crimes, Wrongs or Acts Evidence, referencing Petitioner's prior conviction for the premeditated killing of Charles Carter in Nassau County, Florida. Id. at 60-61. Petitioner filed a Supplemental Discovery Response listing additional witnesses, including mental health witnesses. Id. at 81.

On August 23, 1990, the state charged Petitioner by amended indictment with murder in the first degree and armed robbery with

a firearm.[7]   Ex. 1 at 86-87.   Petitioner moved to exclude a possible prior murder conviction as an aggravating factor.   Id. at 93-95.   The state filed a Notice of Other Crimes, Wrongs or Acts Evidence, referencing Petitioner displaying a pistol at the Rosemount Apartments.   Id. at 102-103.   Petitioner filed a Notice of Intent to Rely on Defense of Voluntary Intoxication at Trial on the Issue of Guilt and at the Penalty Phase of Trial, if Necessary. Id. at 112.

On October 10, 1990, the state moved for a continuance, noting that it intended to use an anticipated murder conviction in Nassau County as an aggravating circumstance in the Duval County murder case.   Id. at 119-20.   The court denied motions to declare the death sentence and part of the statute on aggravating factors unavailable.   Id. at 131, 134.

The record reflects that on January 4, 1991, at a pretrial proceeding, Mr. Davis announced that the defense was withdrawing the defense of insanity.   Ex. 19, Transcript of January 4, 1991 at 68.   Counsel confirmed that the defense was going to rely on an intoxication defense, referencing the notice.   Id. at 69.   Finally, counsel withdrew the motion to declare a statute unavailable.   Id. at 70.

The state, on January 4, 1991, provided notice that Petitioner told Chief Brown of the Nassau County Sheriff's Office an

---

[7] The victim was Ronald Willis.

unsolicited statement, and also provided the content of the statement. Ex. 1 at 136-37. On January 9, 1991, the state provided Petitioner with additional information that he told Sergeant Dolan Tomlinson, Nassau County Sheriff's Office, the same information. Id. at 141-42. Thereafter, Petitioner filed a Motion to Exclude Testimony by Sergeant Dolan Tomlinson and Chief Brown. Id. at 143-44.

Jury selection started on January 22, 1991, Ex. 2, followed by the jury trial. Ex. 3 - Ex. 11. Petitioner and his co-defendant, John David Hatch,[8] both testified at trial. On January 24, 1991, the jury found Petitioner guilty of felony murder and robbery with a firearm. Ex. 11 at 756; Ex. 11, Verdicts.

The penalty phase began on January 25, 1991. Ex. 11. Lieutenant Charles P. Calhoun of the Nassau County Sheriff's Office testified that Petitioner shot and killed Charles McElroy Carter, removed Carter's cowboy boots, took his wallet and approximately $11.00, and then Petitioner said "I guess I will get his job on the boat now." Ex. 12 at 779-81. Mr. Davis objected to Lieutenant Calhoun's testimony on the basis that it was hearsay and improper. Id. at 773-74. The state responded that the Florida Supreme Court has held that it is proper to allow hearsay evidence at the penalty phase proceeding. Id. at 774-75. The court overruled the

---

[8] Mr. Hatch testified against Petitioner in return for a twenty-five year sentence. Ex. 5 at 438.

objection.  <u>Id</u>. at 775.  The state introduced the judgment and sentence in the Nassau County case, Case 90-186-CF.  <u>Id</u>. at 786. Thereafter, the state rested.  <u>Id</u>.

Mr. Davis asked to approach the bench.  <u>Id</u>.  He said:

> Judge, I would like to make a record of the fact that Mr. Clark has decided to not put any evidence on.  He was examined by two psychiatrist [sic] and Dr. Macaluci, but he's decided that he doesn't want any evidence adduced at this hearing and that he does not wish to testify.

<u>Id</u>. at 787.

The court excused the jury, and counsel reiterated:

> All right.  Your Honor, I just wanted to advise the court that Mr. Clark has decided to not exercise his right to testify here or to present other evidence in mitigation.  The court may recall that Mr. Clark was seen by two psychiatrists, Dr. Miller and Dr. Bernard [sic], and he was seen by Dr. Macaluci out of Tallahassee.  They all submitted reports and he knows he can testify but he would like not to present that to the jury.

<u>Id</u>. at 787-88.

The court asked Petitioner to take the stand.  An extensive colloquy transpired:

> THE COURT:  Mr. Clark, you understand, sir, that this is as much your hearing as it is their hearing, do you understand that?
>
> MR. CLARK: Yes, sir.
>
> THE COURT: And do you understand what happened, what Mr. Davis said, is that correct, is that your position in the case?
>
> MR. CLARK: Yes, sir.

THE COURT: Okay.  And have you had time to think about this and reflect on it and is this your desire not to call or present any testimony that Mr. Davis aluded [sic] to?

MR. CLARK: Yes, sir.

THE COURT: In regarding [sic] to your own testimony, did you wish to testify in this matter and tell the jurors anything about yourself or your past or your background, or anything about yourself, or where were you planning to go from here: Is there anything you want to tell them?

MR. CLARK: No.

THE COURT:  You understand I would give you full opportunity to have your say if you want to have your say, that I will give you full opportunity to say whatever you want to say at this time?  I want to make it as clear to you as I can that this is as much your hearing as it is the State of Florida's hearing.

MR. CLARK: Yes, sir.

THE COURT: Do you understand that?

MR. CLARK: Yes, sir.

THE COURT: Okay.  And you are feeling all right today?

MR. CLARK: Yes, sir.

THE COURT: Are you having any trouble thinking or is your reasoning good today?

MR. CLARK: Yes, sir.

THE COURT: Okay.  Are you under the influence of any drugs or alcohol, or anything like that?

MR. CLARK: No, I didn't take none today.

Ex. 12 at 788-89.

The court then specifically asked if Petitioner desired to have testimony presented:

> THE COURT: Okay.  And you don't want any of this testimony presented, and you, yourself, do not want to testify or speak to the jury?
>
> MR. CLARK: I don't want the jury to know nothing.  I want Mr. Willis [the victim's father] to know that I did not kill Ronald Willis.  That's all I've go to say.
>
> (Father of victim is present in court)

Id. at 789-90.

The court explained that this was a different proceeding than the guilt phase.  Id. at 790.  The court continued:

> THE COURT:  But this is your one and only opportunity and I wanted to afford you every opportunity that I could to say anything that you wanted to say to these 12 people that are going to make a recommendation to me and you do seem to be very coherent and you seem to have a good frame of mind in my discussions with you here this morning, but I wanted to afford you every opportunity that I could to speak to these people if you so wanted to.
>
> MR. CLARK: I don't want to.
>
> THE COURT: Okay.  Well, that is your decision and I'm certainly not going to force you or make you do something you don't want to do.  I guess this is something that you have thought about, you and Mr. Davis.  So, I just wanted to make sure and satisfy myself that you understood this proceeding that we are having here today and that this was as much your proceeding as it was the State's, and I would afford you to state anything you or

14

> whatever you wanted to state if you so
> desired.
>
> MR. CLARK: I don't have anything to say.
>
> THE COURT: Okay.  Mr. Davis, then based
> upon my conversation with Mr. Clark and I
> guess the conversation that you had with Mr.
> Clark there won't be any further testimony to
> present.
>
> MR. DAVIS: That is correct, Judge.

Id. at 790-91.

After addressing some other matters and taking a short recess,
the court again asked Mr. Clark about his decision.   The court
inquired:

> THE COURT: All right.  At this time, Mr.
> Clark, I don't mean to be leaning on you but
> you realize I wanted to just double check
> before we begin the argument by the State and
> by Mr. Davis, I wanted to ask you if you
> wanted to testify or speak to the jury?
>
> MR. CLARK: No, sir.

Id. at 792; Ex. 13 at 793.

The court made the following finding on the record:

> THE COURT: All right.  **I would state that
> I have talked to Mr. Clark here this morning
> and I do find that he is clear, lucid, and has
> a clear understanding of these proceedings,
> and he has elected not to speak on his behalf,
> but I did want to give you a further
> opportunity if you did.**

Ex. 13 at 793 (emphasis added).

After the jury returned to the courtroom, the court asked if
the defense wished to present any testimony.  Mr. Davis responded

15

in the negative.  Id.  Defense counsel did, however, present
closing argument.  Ex. 15.  He imparted to the jury the importance
of its recommendation to the court.  Id. at 809.  He explained that
the jury would need to address the aggravating and mitigating
circumstances.  Id.  He noted that the jury's recommendation would
"carry great weight."  Id. at 810.  He also focused on explaining
mitigating circumstances.  Id. at 810-11.  Additionally, Mr. Davis
asked the jury to consider culpability.  Id. at 811.  He emphasized
the fact that both Petitioner and Mr. Hatch had the opportunity to
commit the homicide, and Mr. Hatch was going to get out of prison
after serving his time.  Id.

Mr. Davis told the jury to take into consideration the fact
that Petitioner was twenty-one years old at the time of the
offense.  Id. at 812.  He also urged the jury to consider that the
death penalty is reserved for extreme, heinous cases, and this case
was one in which the jury should return a recommendation for life.
Id. at 813.

By a verdict of 11-1, the jury recommended to the court that
it impose the death penalty.  Ex. 17 at 822.  Thereafter, on
February 20, 1991, the court conducted a Spencer hearing.[9]  Ex. 18.
At the inception of the hearing, Mr. Davis asked the court "to

---

[9] Spencer v. State, 615 So.2d 688 (Fla. 1993) (requiring the
trial court to hold a hearing in which the defense and the state
are provided an opportunity to present additional evidence and
argument to the court, prior to pronouncement of sentence).

include in it's consideration the reports by Dr. Peter Macaluci,

Dr. Bernard [sic] and Dr. Miller which are in the court file."[10]

Id. at 830. The court stated that it had read two of the reports

and would read the third report as well. Id. at 831. Mr. Davis

---

[10] George W. Barnard, M.D., Professor and Director, Forensic Psychiatry Division, University of Florida, submitted a report dated September 19, 1990, and it is contained in the record. Ex. 30 at 661-66 (Dr. Barnard's July 6, 1990 Letter and the September 19, 1990 report are filed in camera (S-58)). This report contains Petitioner's accounts of the Nassau County and Duval County crimes. Ex. 30 at 661-62. For the Duval County crime, Petitioner stated that he did not drink prior to 4:00 p.m., but he drank a case of beer at the co-defendant's house. Id. at 662. Petitioner stated that he then drank some of a twelve-pack of beer. Id. Petitioner claimed his co-defendant shot the victim. Id. At one point Petitioner said he did not use cocaine on that day, but later on he changed his mind and said he had used some but did not know the amount. Id. Petitioner did not want to talk about his prior sexual battery offense. Id. A very detailed past history is included in the report, including family, educational, employment, marital, military, medical, psychiatric, and alcohol and drug history. Id. at 662-64. Of note, it includes the fact that both his father and mother had psychiatric issues, his mother was gay and Petitioner was sexually abused by more than one of her mother's female friends, his father was a violent alcoholic and drug dealer, and Petitioner had homicidal thoughts about killing the woman who abused him. Id. at 662-63. The report notes the fact that Petitioner was suspended from school for fighting and using drugs, and he was in special education. Id. at 663. It states that Petitioner has been suicidal, cutting his wrists or overdosing on twenty to thirty occasions. Id. at 664. It includes an extensive history of Petitioner's underage drinking and the fact that he continued to use drugs and alcohol as an adult. Id. Dr. Barnard found Petitioner to be of low normal intelligence, and Dr. Barnard found no undue anxiety or depression. Id. Dr. Barnard found Petitioner to be competent to stand trial, and in particular, found Petitioner's claims of partial amnesia to be self-serving. Id. at 665. Dr. Barnard found Petitioner was legally sane at the time of the crimes. Id. He noted that although Petitioner "was under the influence of alcohol and/or drugs, the data do not indicate that he was out of contact with reality." Id.

explained the relevance of the reports to the sentencing proceeding:

> MR. DAVIS: Yes, sir. Those reports, Your Honor, I would submit to the court contain relevant background information on Mr. Clark. The court may recall that Mr. Clark chose not to testify or have any evidence presented during the penalty phase of the proceedings because of the nature of it, he didn't care to have it published, but I submit to the court that the court is permitted to consider all of this information. These are three qualified doctors in Nassau County that saw Mr. Clark. They will have evidence as to his background. He has a prolonged history of alcohol substance abuse. The record shows that he never received any treatment for that even though it was recommended that he receive such treatment as early as 1986 or 1987. At the time of the homicide, the court will recall, there was testimony of alcohol substance. We didn't present the level of intoxication because the level of intoxication perhaps didn't rise to the legal level of intoxication, but it is, however, a factor in this case.

Id. at 831-32.

Counsel also asked the court to consider proportionality and the circumstances of the Duval County case:

> I would also urge the court to consider the total circumstances of this case. The jury has found Mr. Clark guilty of felony murder. The court will recall that they also had the option of first degree premeditated murder so there is, I believe, evidence in this case that this was more of a spontaneous homicide which the jury had found and was not premeditated but a spontaneous homicide in this case based on the verdict, the jury's verdict and there was no plan to kill Mr. Willis. He did die as a result of this homicide and primarily we would ask the court

> to consider the doctrine of porportionlity
> [sic] as applied to the imposition of the
> death penalty in this case.

<u>Id</u>. at 832.

Mr. Davis also referred to Petitioner's troubled upbringing.
<u>Id</u>. at 835.  He submitted "that there are mitigating circumstances
in the record that I have referred the court to."  <u>Id</u>. at 836.
Counsel then said he would ask Petitioner if he would like to speak
to the court.  <u>Id</u>.  The court then asked Petitioner if there was
anything else he wanted the court to consider before sentencing.
<u>Id</u>.  Petitioner's succinctly responded: "I ain't got nothing to
say.  Nobody believed me so far.  I ain't got nothing to say."  <u>Id</u>.
at 837.

The court, once again, gave Petitioner another opportunity to
present testimony.  The court said:

> THE COURT: I don't know about that.  You
> never testified before me.  You elected not
> to.  But I did want to afford you every
> opportunity today to state anything about this
> case or more specifically, as you know, the
> sentence can only be life or death on Friday
> and I wanted to give you an opportunity to
> state anything that you wanted to state.

<u>Id</u>.

Petitioner responded:

> MR. CLARK: I did not do it, and either
> one of them is just as bad, life or death, and
> I didn't [sic] it don't make no
> sense because nobody has believed me so far.
> I have nothing else to say about it.

<u>Id</u>.

19

To counter the medical reports presented by the defense, the state asked the court to consider the presentence investigation (PSI) from the Nassau County case.[11] Id. at 841-42.  Prior to the conclusion of the Spencer hearing, Petitioner said:

> MR. CLARK: I should say about the two officers that said I said that, if you go to Nassau County and ask Jeff Williams, Mullins, and I can name about ten other officers, I

---

[11] The Respondents filed the November 1990 PSI (not included in the state court public record) (Doc. S-58) in camera.  The circuit court considered the document in rendering its sentence, and the Florida Supreme Court mentioned the PSI in its decision. Clark, 613 So.2d at 414.  Of note, Petitioner refused to cooperate by providing a statement to the officer undertaking the review. Id. at 924.  It does state that Petitioner was referred to Human Resources Services as an abused child on January 18, 1985 for bruises and welts; however, the referral was closed on February 10, 1985 as unfounded.  Id. at 924-25.  Additionally, it contains his juvenile record and his adult record, including a conviction for lewd and lascivious assault on a child ("The defendant was partially successful in penetrating the vaginas and rectums of his three stepsisters ages 6 and 5 (twins) while he was supposed to be babysitting them") for which Petitioner originally received probation.  Id. at 925.  It states that Petitioner completed the ninth grade, reporting that Petitioner quit school at age fifteen due to trouble with the law.  Id.  Based on a previous Florida Department of Corrections' investigation, it contains information that Petitioner's parents divorced when he was approximately age six.  Id. at 926-27.  With regard to mental health, the writer noted that it is of concern since a special condition of Petitioner's probation was to submit to psychological evaluation and treatment, but due to Petitioner violating his probation by absconding, this special condition was never completed.  Id. at 927.  Sheriff Laurie Ellis described Petitioner as "a bloodthirsty killer who has been involved in more than one homicide[.]"  Id.  The recommended disposition found Petitioner showed no remorse, it held little hope for his rehabilitation while being able to simultaneously protect society, and concluded Petitioner knows right from wrong and there is no evidence of diminished capacity. Id. at 928.  The recommendation was "the maximum penalty allowed by law" and ensuring that "this defendant never returns to the general population."  Id.

> told them what happened in this case.  I told
> them that David [Hatch] killed them.  How them
> two officers there misunderstood me, I don't
> know but they did.

Id. at 847.

On January 30, 1991, Petitioner filed a Motion for New Trial.
Ex. 17 at 186-87.  The court heard the motion on February 22, 1991.
Ex. 18 at 848; Ex. 19 at 849.  The court denied the motion.  Ex. 19
at 849.

Immediately thereafter, the court adjudicated Petitioner
guilty as to count two, the offense of armed robbery, and sentenced
him to life to run concurrently with the sentence as to count one.
Id.  The court, before imposing sentence on count one, recognized
that the jury, by a vote of eleven to one, recommended the
imposition of a sentence of death for the crime of murder in the
first degree.  Id. at 850.  The court summarized the evidence
presented at trial.  Id. at 850-52.  The court noted Petitioner's
criminal record, including a November of 1988 conviction for lewd
and lascivious assault on a child, for which Petitioner received
five years of probation.  Id. at 852.  Petitioner violated
probation, and was sentenced to thirty months in prison.  Id.  In
November of 1990, Petitioner was convicted of murder in the first
degree (Nassau County Case) and sentenced to death.  Id.  The court
also commented on the fact that Petitioner, by dumping the victim's
body into the river, deprived the victim's family of the right to
bury his body.  Id. at 853.

Finally, the court announced:

> Before imposing sentence this court has carefully studied and considered all of the evidence, the testimony at trial and at the advisory sentencing proceeding, the applicable Florida status [sic], the case law and all other factors touching upon this case. **The court having considered both the statutory and the non-statutory mitigating circumstances finds that there are no mitigating circumstances existing which would outweigh or out number the statutory aggravating circumstances in this case.**
>
> Further, there are sufficient and great aggravating circumstances which exist to justify the sentence of death.

Id. (emphasis added).

The court adjudicated Petitioner guilty of murder in the first degree and sentenced him to death. Id. In addition, the sentences imposed were deemed to run consecutive to the Nassau County sentence. Id. at 854; Ex. 19 at 200-202. Of note, the court entered a detailed sentencing order. Ex. 19 at 203-14.

Petitioner filed a Notice of Appeal on February 27, 1991. Id. at 220. The Supreme Court of Florida, on direct appeal, set forth the facts of the crimes as well as the trial court's findings of statutory aggravators and no statutory mitigating factors.

> On the afternoon of January 13, 1990 two teenagers walking down a dirt road in rural Duval County found a crowbar, some broken false teeth, a bloody shirt, and some blank checks, with the name Ronald Willis printed on them, that also had blood on them. One of the boys returned home and told his mother what they had found, and she called the sheriff's office. Also on the 13th Willis' mother

22

called his ex-wife to see if she knew of Willis' whereabouts. The ex-wife did not, and she and her sister began driving around looking for him. They found Willis' truck at a motel, parked near it, and started calling his name. A small child was in the truck, and a man identifying himself as the child's father removed the child and pointed out Ronald Clark and John Hatch as the people who had been driving the truck. The ex-wife took the keys and locked the truck while her sister went to telephone the police. Clark approached the ex-wife, grabbed her, and tried to take the keys. When she kicked him, he ran away. The sister ran after Clark and noticed that he was wearing Willis' cowboy boots. Clark and Hatch ran off before the police arrived. They had been identified; however, and the police arrested Hatch in Nassau County on January 20, 1990.

Hatch described the events of January 12, to 13 as follows. When he arrived home after work on January 12, Clark was at his house. They decided to hitchhike to Jacksonville to shoot pool. Along the way they shot at signs and beer bottles with a pistol Hatch had stolen from a house he had been remodeling. Willis stopped to give them a ride, and, during the ride, Clark whispered to Hatch that he was going to steal the truck. When Hatch asked Willis to stop the truck, both he and Clark got out of the truck, and Clark, who had the stolen pistol, shot Willis seven or eight times. Clark shoved Willis' body to the center of the seat, Hatch got in the passenger's seat, and Clark drove to a more secluded area. Clark pulled Willis' body from the truck, during which Willis' shirt came off. Clark then took Willis' wallet and boots and pushed his body into a ditch. Clark and Hatch went to a restaurant and to Hatch's ex-wife's apartment complex, but later returned to where they had left the body. Taking the body with them, they went to Clark's father's house and got a rope and several cinder blocks. They then drove to the Nassau County Sound Bridge, tied the blocks to the body, and

dumped it into the water. After driving around some more, they went to an acquaintance's house to buy drugs. The acquaintance went with them to the motel where Willis' ex-wife and her sister found the truck. Hatch and Clark left the state, eventually winding up in South Carolina. Hatch returned to Nassau County, where he was arrested. South Carolina authorities arrested Clark on February 7, 1990 and returned him to Florida.

Clark v. State, 613 So.2d 412-13 (Fla. 1992) (per curiam), cert. denied, 510 U.S. 836 (1993).

The Florida Supreme Court noted that the jury convicted Clark of armed robbery and felony murder. Id. at 413. Also, "[d]uring the penalty phase, Clark refused to allow his attorney to present any mitigating evidence." Id. The court pointed out that defense counsel argued that Petitioner should be sentenced to life, but the trial court disagreed. Id. Although Petitioner raised no direct challenges to the guilt phase of his trial, the court found "that the record contains competent, substantial evidence to support his conviction." Id.

Addressing Petitioner's challenges to the penalty phase of his trial, the Florida Supreme Court concluded: "[t]here are two valid aggravators, including a prior conviction of first-degree murder, and no mitigators. The cases he cites to support his argument are distinguishable, and his death sentence is not disproportionate to other cases where we have upheld death sentences." Id. at 415

(citations omitted).   The court affirmed the conviction and the sentence of death.   Id.

On direct appeal, Petitioner appealed his conviction of first-degree murder and sentence of death and raised the following four issues, claiming the trial court erred in:   (1) "allowing Clark to waive the presentation of mitigating evidence during the penalty phase of his trial and in failing to insure that the death penalty was not improperly imposed in violation of the Eighth and Fourteenth Amendments and Article I, Sections 9, 16, and 17 of the Constitution of Florida[;]" (2) "doubling aggravating circumstances and in failing to properly find, consider, and weigh mitigating factors in the sentencing decision[;]" (3) "allowing the state to present the facts of Clark's prior murder conviction during penalty phase solely through hearsay testimony of the lead police investigator[;]" and (4) "sentencing Clark to death since such a sentence is not proportional." Ex. 20 at i-ii.  The State filed an Answer Brief.   Ex. 21.   On December 24, 1992, the Florida Supreme Court affirmed Clark's conviction of first-degree murder and sentence of death.   Ex. 22.   Petitioner moved for rehearing, and the Florida Supreme Court denied rehearing.   Ex. 23.

Petitioner filed a Petition for Writ of Certiorari to the Supreme Court of Florida raising one issue:

> Whether the Supreme Court of Florida provided a constitutionally adequate appellate review of Petitioner's death sentence as required by the Eighth and Fourteenth

> Amendments when the court concluded there were
> no mitigating circumstances based on the
> court's factually erroneously [sic] conclusion
> that the trial court did not find any
> nonstatutory mitigating circumstances (even
> though the trial judge was presented with
> unrefuted psychiatric reports supporting such
> mitigation and the Supreme Court of Florida in
> a separate case involving Petitioner had held
> virtually the identical mitigating evidence to
> be strong mitigation)?

Ex. 23 at i.  The state filed a brief in opposition.  Ex. 24.  The
Supreme Court of the United States denied certiorari on October 4,
1993.  Ex. 25.

On November 16, 1994, Petitioner, through counsel, filed a
Motion to Vacate Judgments of Conviction and Sentence with Special
Request for Leave to Amend and for Evidentiary Hearing, pursuant to
Fla. R. Crim. P. 3.850.  Ex. 26.  On November 1, 1995, Petitioner,
through counsel, filed a First Amended Motion to Vacate Judgments
of Conviction and Sentence with Special Request for Leave to Amend
and for Evidentiary Hearing (First Amended Motion).  Ex. 27.  The
state filed its response.  Ex. 28 at 203-30.  The circuit court
summarily denied some claims but announced its intention to conduct
an evidentiary hearing on a claim (claim 6) that the state withheld
material, exculpatory evidence, and/or presented misleading
evidence leading to omissions rendering counsel ineffective and
preventing a full adversarial testing of the evidence; a claim
(claim 8) of ineffective assistance of counsel at the guilt phase
of the trial; a claim (claim 9) of ineffective assistance of

counsel during voir dire; and a claim (claim 15) that Petitioner's death sentence is unreliable due to the perjured testimony of John David Hatch.  <u>Id</u>. at 231-45.  However, the court did not schedule an evidentiary hearing.  <u>Id</u>. at 245.  Apparently, an evidentiary hearing was neither scheduled nor held by the circuit court.

On June 20, 2003, Petitioner filed a Supplement to Amended Motion to Vacate Judgments of Convictions and Sentences.  <u>Id</u>. at 257-74.  The state responded.  <u>Id</u>. at 275-97.  On September 8, 2005, the circuit court appointed Harry Brody to represent Petitioner.  Ex. 29 at 496.  Petitioner moved to file an amended post-conviction motion, and the circuit court granted the motion on October 3, 2005.  Ex. 28 at 298-99.  Petitioner, through counsel, filed a [Second] Amended Motion to Vacate Judgments of Conviction and Sentence with Special Request for Leave to Amend and for Evidentiary Hearing (3.850 motion).  Ex. 29 at 300-81.  The state responded.  Ex. 30 at 382-444.

In the 3.850 motion, Petitioner raised twenty-one claims, many of which concerned the alleged ineffectiveness of his defense attorney.  The circuit court granted an evidentiary hearing on the first three claims (a <u>Brady</u>/<u>Giglio</u> claim,[12] an ineffective assistance of counsel claim with respect to the penalty phase of the trial, and an ineffective assistance of counsel claim with

---

[12] <u>Brady v. Maryland</u>, 373 U.S. 83 (1963); <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

respect to the guilt phase of the trial).  Ex. 30 at 445-46.  The
circuit court conducted an evidentiary hearing on February 26,
2007.  Ex. 32 at 932-1093.  Petitioner called his trial counsel,
Mr. Davis, as a witness in support of the evidentiary hearing
claims.  In addition, Petitioner called Michael Thompson in support
of a new claim of newly discovered evidence, although a newly
discovered evidence claim was not raised in the 3.850 motion.  The
state presented neuropsychologist Tannahill Glen, who testified
concerning her psychological evaluation of Petitioner.  Co-
defendant John David Hatch testified in rebuttal to the newly
discovered evidence claim.  Written closing arguments were
permitted and filed.  Ex. 30 at 610-22, 623-92.[13]

On September 17, 2007, in a written order, the circuit court
denied the 3.850 motion.  Ex. 31 at 826-59.  Petitioner raised
three issues on appeal, see Ex. 33, succinctly described by the
Supreme Court of Florida as follows:

> (1) trial counsel was ineffective for failing
> to investigate and present evidence that Hatch
> was the shooter; (2) trial counsel was
> ineffective for failing to present mitigation
> at the penalty phase of his trial or,
> alternatively, for failing to convince Clark
> that he needed to present mitigation; and (3)
> there is newly discovered evidence that Hatch
> confessed to being the shooter in the Duval
> County murder, which Clark claims entitled him
> to a new trial.

_____

[13] Petitioner submitted a pro se document entitled Supplemental
Written Arguments to the February 26, 2007 Evidentiary Hearing.
Ex. 30 at 693-704.

<u>Clark v. State</u>, 35 So.3d 880, 886 (Fla. 2010) (per curiam); Ex. 35.

The State filed a brief in opposition. Ex. 34. The Supreme Court of Florida affirmed the circuit court's denial of the 3.850 motion. <u>Clark</u>, 35 So.3d 880; Ex. 35. The mandate issued on May 20, 2010. Response at 13.

On June 25, 2009, Petitioner, pro se, filed a Petition for All Writs Relief Pursuant to 28 USC § 1651 in the United States District Court for the Northern District of Florida. Ex. 37. On July 6, 2009, the federal district court dismissed the petition, noting that if the state courts handled Petitioner's case in a manner that violated federal law, Petitioner would be able to file a petition for writ of certiorari. Ex. 38.

Petitioner, through counsel, filed the instant Petition in this Court on April 28, 2011. He seeks habeas relief for his 1991 Duval County conviction and sentence.

### III. Nassau County Murder Conviction

As previously mentioned, Petitioner was convicted in the circuit court, Nassau County, Florida, of first degree murder and sentenced to death. The Florida Supreme Court affirmed the conviction but reduced the sentence to life imprisonment without eligibility for parole for twenty-five years. It found:

> In mitigation, Clark presented evidence of his alcohol abuse and emotional disturbance, as well as his abused childhood. Much of this evidence was uncontroverted. The trial court rejected the statutory mitigating circumstances concerning mental impairments,

29

finding that Clark did not suffer from extreme mental or emotional disturbance and that his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was not substantially impaired. However, the court did acknowledge that the evidence showed that Clark was a disturbed person, that his judgment may have been impaired to some extent, that he drank an excessive amount of alcohol on the day of the murder, and that he was abused as a child.

Although there was some variation in testimony as to the specific amount of alcohol consumed by Clark on the day of the crime, all witnesses agreed that the amount was substantial. Clark began drinking early that day and continued drinking throughout the day. In addition, Clark testified that he smoked crack cocaine that day and took several of his father's antipsychotic prescription pills, although this testimony was not corroborated.

Apparently, spending the entire day drinking was typical for Clark, as he presented evidence of an extensive history of substance abuse. Lay and expert witnesses testified that Clark began using alcohol at the age of six and was drinking regularly by the age of eleven or twelve. Clark also frequently used LSD, PCP, cocaine, and various other drugs. As a result of his alcohol and drug abuse, Clark dropped out of high school to avoid being expelled.

Clark was emotionally and sexually abused as a child. His parents were alcoholics who separated when Clark was five or six. Clark was sent back and forth from one parent to another. He witnessed physical abuse and violence between his parents, and he was sexually abused by his mother's lesbian lover.

In 1984, Clark was evaluated by a psychologist, who noted that Clark was very disturbed and needed intense treatment to prevent him from acting in a more brutal and

violent way. All experts who evaluated Clark prior to trial found him to be chemically dependent.

While we find no error in the trial court's rejection of this evidence as statutory mitigation, especially in light of the defense expert's own testimony that the statutory mitigating circumstances were inapplicable here, this evidence does constitute strong nonstatutory mitigation. The death penalty is reserved for "the most aggravated and unmitigated of most serious crimes." Dixon, 283 So.2d at 7. Having found that only one valid aggravating circumstance exists, and having considered the mitigation established by the record, we find that this is not such a crime. The sentence of death in this case is disproportionate when compared with other capital cases where this Court has vacated the death sentence and imposed life imprisonment. See, e.g., McKinney v. State, 579 So.2d 80, 85 (Fla. 1991); Caruthers v. State, 465 So.2d 496, 499 (Fla. 1985); Rembert v. State, 445 So.2d 337, 340 (Fla. 1984).

Clark v. State, 609 So.2d 513, 515-16 (Fla. 1992) (per curiam).

Of note, the Florida Supreme Court, upon appeal of the denial of Petitioner's post conviction motion in the Duval County conviction for murder, summarized the penalty phase of the Nassau County case and recognized Mr. Davis ultimately concluded that the mitigating evidence "cut both ways":

Prior to Clark's conviction in Duval County, he was tried and convicted in Nassau County for the murder of Charles Carter. Clark v. State, 609 So.2d 513 (Fla. 1992). Judge Henry Davis, then a criminal defense attorney, represented Clark in both cases. In the Nassau County case, the evidence presented demonstrated that Clark led a troubled childhood. Id. at 515-16. Clark's parents were described as alcoholics, and his father was a

31

drug dealer. Clark witnessed physical abuse between his parents. Clark began drinking at age twelve, and although the amount consumed on the day of the murder could not be determined, it was excessive. The record also showed Clark had ingested a controlled substance. After psychological evaluation, Clark was determined competent to stand trial. Clark admitted during an evaluation in 1986 that he enjoyed hurting people and derived pleasure from watching blood spatter. The trial judge considered and rejected the following mitigation: (1) lack of significant prior criminal history, (2) extreme mental or emotional disturbance, (3) that the victim was a participant or consented to the act, (4) that the defendant was a minor participant, (5) that he acted under extreme duress or substantial domination, (6) that he had diminished capacity, and (7) Clark's age at time of crime. Additionally, the trial judge stated:

> There is no doubt from the record herein that the Defendant led a hard and difficult life. His early childhood experiences of being abused by his mother's lesbian lover or having to witness physical abuse and violence between his parents was unfortunate. However, there is nothing in his background that would serve to mitigate the murder herein.

Based on this, defense counsel Davis determined the mitigating evidence "cut both ways" and, along with Clark, decided not to present mitigation at the Duval County trial. Clark asserts that the mitigation presented in the Nassau County case was virtually identical to what would have been presented in the Duval County case.

Clark, 35 So.3d at 885-86.

## IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The state circuit court conducted an evidentiary hearing, and the pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004), an evidentiary hearing will not be conducted. Indeed, being mindful of the deferential standards prescribed by 28 U.S.C. § 2254, and taking into account those standards, the Court finds an evidentiary hearing is not appropriate. Allen v. Sec'y, Fla. Dep't of Corr., 611 F.3d 740, 745 (11th Cir. 2010) (citations omitted) (if not barred from obtaining an evidentiary hearing pursuant to 2254(e)(2), the federal court must employ deferential standards in deciding whether to grant an evidentiary hearing), cert. denied, 131 S.Ct. 2898 (2011).

33

## V.  Standard of Review

The Court will analyze Petitioner's claims under 28 U.S.C. §

2254(d).[14]  Section 2254(d) states:

> An application for a writ of habeas
> corpus on behalf of a person in custody
> pursuant to the judgment of a State court
> shall not be granted with respect to any claim
> that was adjudicated on the merits in State
> court proceedings unless the adjudication of
> the claim –
>
> > (1) resulted in a decision that
> > was contrary to, or involved an
> > unreasonable application of, clearly
> > established Federal law, as
> > determined by the Supreme Court of
> > the United States; or
> >
> > (2) resulted in a decision that
> > was based on an unreasonable
> > determination of the facts in light
> > of the evidence presented in the
> > State court proceeding.

Thus, 28 U.S.C. § 2254(d) "bars religation of any claim

'adjudicated on the merits' in state court, subject only to the

exceptions in §§ 2254(d)(1) and (d)(2)." Harrington v. Richter,

131 S.Ct. 770, 784 (2011).

The United States Supreme Court advised, "AEDPA[15] erects a

formidable barrier to federal habeas relief for prisoners whose

claims have been adjudicated in state court." Burt v. Titlow, 134

---

[14] Respondents have not asserted that the Petition is untimely
filed. See 28 U.S.C. § 2244(d); Response.

[15] The Antiterrorism and Effective Death Penalty Act (AEDPA).

S.Ct. 10, 16 (2013).  Of note, the Supreme Court recently reversed a decision of the Sixth Circuit, finding it "disregarded the limitations of 28 U.S.C. § 2254(d) - a provision of law that some federal judges find too confining, but that all federal judges must obey."  White v. Woodall, 134 S.Ct. 1697, 1701 (2014), reh'g denied, 134 S.Ct. 2835 (2014).  The Supreme Court strongly admonished federal judges that habeas decisions must be made within the strict parameters set forth in AEDPA:

> Section 2254(d) of Title 28 provides that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim ... resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." "This standard," we recently reminded the Sixth Circuit, "is 'difficult to meet.'" Metrish v. Lancaster, 569 U.S. ----, ----, 133 S.Ct. 1781, 1786, 185 L.Ed.2d 988 (2013). "'[C]learly established Federal law'" for purposes of § 2254(d)(1) includes only "'the holdings, as opposed to the dicta, of this Court's decisions.'" Howes v. Fields, 565 U.S. ----, ----, 132 S.Ct. 1181, 1187, 182 L.Ed.2d 17 (2012) (quoting Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). And an "unreasonable application of" those holdings must be "'objectively unreasonable,'" not merely wrong; even "clear error" will not suffice. Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). Rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in

35

> justification that there was an error well
> understood and comprehended in existing law
> beyond any possibility for fairminded
> disagreement." Harrington v. Richter, 562 U.S.
> ----, ----, 131 S.Ct. 770, 786-787, 178
> L.Ed.2d 624 (2011).

White, 134 S.Ct. at 1702.

The standard of review is described by the Eleventh Circuit as follows:

> As explained by the Supreme Court, the
> phrase "'clearly established Federal
> law' . . . refers to the holdings . . . of
> [the Supreme Court's] decisions as of the time
> of the relevant state-court decision."
> Williams v. Taylor, 529 U.S. 362, 412, 120
> S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). We
> have held that to be "contrary to" clearly
> established federal law, the state court must
> either (1) apply a rule "that contradicts the
> governing law set forth by Supreme Court case
> law," or (2) reach a different result from the
> Supreme Court "when faced with materially
> indistinguishable facts." Putman v. Head, 268
> F.3d 1223, 1241 (11th Cir. 2003).

> As regards the "unreasonable application"
> prong of § 2254(d)(1), we have held as
> follows:

>> A state court decision is an
>> unreasonable application of clearly
>> established law if the state court
>> unreasonably extends or fails to
>> extend a clearly established legal
>> principle to a new context. An
>> application of federal law cannot be
>> considered unreasonable merely
>> because it is, in our judgment,
>> incorrect or erroneous; a state
>> court decision must also be
>> unreasonable. Questions of law and
>> mixed questions of law and fact are
>> reviewed de novo, as is the district
>> court's conclusion regarding the

36

> reasonableness of the state court's
> application of federal law.
>
> Jennings v. McDonough, 490 F.3d 1230, 1236
> (11th Cir. 2007) (quotation marks and
> citations omitted). In sum, "a federal habeas
> court making the 'unreasonable application'
> inquiry should ask whether the state court's
> application of clearly established federal law
> was objectively unreasonable." Williams, 529
> U.S. at 409, 120 S.Ct. at 1521. Finally, 28
> U.S.C. § 2254(e)(1) commands that for a writ
> to issue because the state court made an
> "unreasonable determination of the facts," the
> petitioner must rebut "the presumption of
> correctness [of a state court's factual
> findings] by clear and convincing
> evidence."[16] 28 U.S.C. § 2254(e)(1).

Ward v. Hall, 592 F.3d 1144, 1155-56 (11th Cir. 2010), cert.
denied, 131 S.Ct. 647 (2010).

Finally, for a state court's resolution of a claim to be an
adjudication on the merits, so that the state court's determination
will be entitled to deference for purposes of federal habeas corpus
review under AEDPA, all that is required is a rejection of the
claim on the merits, not an opinion that explains the state court's
rationale for such a ruling. Harrington, 131 S.Ct. at 785 (holding
that § 2254(d) does not require a state court to give reasons
before its decision can be deemed to have been adjudicated on the
merits); Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245,
1255 (11th Cir. 2002) (rejection is sufficient; an explanation is

---

[16] "This presumption of correctness applies equally to factual
determinations made by state trial and appellate courts." Bui v.
Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted)
(citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

not required), <u>cert</u>. <u>denied</u>, 538 U.S. 906 (2003).   Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under § 2254(d).

## VI.  Exhaustion and Procedural Default

There are prerequisites to a federal habeas review.  The Court must be mindful of the doctrine of procedural default:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>, <u>supra</u>, at 747–748, 111 S.Ct. 2546; <u>Sykes</u>, <u>supra</u>, at 84–85, 97 S.Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. ----, ----, 131 S.Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S. ----, ----, 130 S.Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750, 111 S.Ct. 2546.

<u>Martinez</u>, 132 S.Ct. at 1316.

In addition, in addressing the question of exhaustion, the Court must ask whether the claim was raised in the state court proceedings and whether the state court was alerted to the federal nature of the claim:

> Before seeking § 2254 habeas relief in federal court, a petitioner must exhaust all state court remedies available for challenging his conviction. See 28 U.S.C. § 2254(b), (c). For a federal claim to be exhausted, the petitioner must have "fairly presented [it] to the state courts." McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005). The Supreme Court has suggested that a litigant could do so by including in his claim before the state appellate court "the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Baldwin v. Reese, 541 U.S. 27, 32, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004). The Court's guidance in Baldwin "must be applied with common sense and in light of the purpose underlying the exhaustion requirement"—namely, giving the state courts "a meaningful opportunity" to address the federal claim. McNair, 416 F.3d at 1302. Thus, a petitioner could not satisfy the exhaustion requirement merely by presenting the state court with "all the facts necessary to support the claim," or by making a "somewhat similar state-law claim." Kelley, 377 F.3d at 1343-44. Rather, he must make his claims in a manner that provides the state courts with "the opportunity to apply controlling legal principles to the facts bearing upon (his) [federal] constitutional claim." Id. at 1344 (quotation omitted).

Lucas v. Sec'y, Dep't of Corr., 682 F.3d 1342, 1351-52 (11th Cir. 2012), cert. denied, 133 S.Ct. 875 (2013).

Procedural defaults may be excused under certain circumstances. Indeed, "[a] petitioner who fails to exhaust his

claim is procedurally barred from pursuing that claim on habeas review in federal court unless he shows either cause for and actual prejudice from the default or a fundamental miscarriage of justice from applying the default." Id. at 1353 (citing Bailey v. Nagle, 172 F.3d 1299, 1306 (11th Cir. 1999) (per curiam)).   The fundamental miscarriage of justice exception is only available in extraordinary cases upon a showing of "'actual' innocence" rather than mere "'legal' innocence." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted), cert. denied, 535 U.S. 926 (2002).

In order for Petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S.Ct. 2639).   Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S.Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir.), cert. denied, 528 U.S. 934 (1999).   Of note, "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." Martinez, 132 S.Ct. at 1315.

## VII. Ineffective Assistance of Counsel

The seminal United States Supreme Court case guiding this Court in addressing claims of ineffective assistance of trial counsel is <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). In order to prevail on this Sixth Amendment claim, Petitioner must satisfy the two-pronged test set forth in <u>Strickland</u>, 466 U.S. at 688, requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different).

## VIII. Findings of Fact and Conclusions of Law

### A. Ground One

**GROUND ONE:** Petitioner was denied the effective assistance of counsel at the penalty phase of his trial, contrary to the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

Petitioner claims his trial counsel was ineffective for failure to present available mitigating evidence or, alternatively, for failure to convince Petitioner that he needed to present mitigation. Respondents assert this ground is procedurally barred. Response at 22-23. Petitioner raised this claim in his post conviction motion, and after an evidentiary hearing, the circuit court denied the claim.

Initially, of importance, the circuit court recognized the standard for ineffectiveness as set forth in Strickland. Ex. 31 at 830-31. Also, the circuit court granted an evidentiary hearing with respect to this claim. The court appointed post conviction counsel for Petitioner, and post conviction counsel presented Petitioner's trial counsel's testimony at the evidentiary hearing.

The circuit court, in a very thorough decision, rejected this claim, both on a procedural basis, and, in the alternative, on its merits. The circuit court stated:

> The Defendant's second claim of the Second Amended Motion and eighth claim of the First Amended Motion is that trial counsel was ineffective during the penalty phase for failing to adequately investigate and prepare mitigating evidence. Initially this Court notes that the Defendant, having raised this claim on direct appeal, is procedurally barred from raising it again in a motion for post-conviction relief. Clark v. State, 613 So.2d 412, 414 (Fla. 1992); see Cherry v. State, 659 So.2d 1069, 1072 (Fla. 1995); Torres-Arboleda v. Dugger, 636 So.2d 1321, 1323 (Fla. 1994); Medina v. State, 573 So.2d 293, 295 (Fla. 1990) (affirming the denial of post-conviction relief and holding that issues that had been raised or should have been raised on direct appeal are barred in post-conviction proceedings). Moreover, the record supports that the trial court adequately inquired into the Defendant's decision to waive mitigation. (T.T. at 786-791.)

Ex. 31 at 836. In its decision on post conviction appeal, the Florida Supreme Court, reiterated that "[b]ecause this claim was raised on direct appeal and found to be without merit, it is procedurally barred from being raised in postconviction

42

proceedings."[17]   Clark, 35 So.3d at 889 (citing Torres v. Arboleda v. Dugger, 636 So.2d 1321, 1323 (Fla. 1994) ("Proceedings under rule 3.850 are not to be used as a second appeal; nor is it appropriate to use a different argument to relitigate the same issue.")).

This Court, in considering the procedural default doctrine, opined:

> "The Supreme Court has explained the doctrine of procedural default as follows: 'In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" Brown v. McDonough, 200 Fed. Appx. 885, 887 (11th Cir. 2006) (unpublished opinion) (quoting Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). "Procedural default arises when 'the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred.'" Id. (quoting Bailey v. Nagle, 172 F.3d 1299, 1302-03 (11th Cir. 1999); see id. at 1307 (Carnes, J., concurring)).

---

[17] Upon review, on direct appeal, the Florida Supreme Court rejected Petitioner's claim that the trial court erred in allowing him to waive the presentation of mitigating evidence, concluding Petitioner had the right to refuse to participate in the sentencing proceeding. Clark, 613 So.2d at 413-14. Notably, the court held the issue to be without merit because the record showed Petitioner "understood the consequences of his decision and that he voluntarily and knowingly waived the presentation of mitigating evidence." Id. at 414.

<u>Fetrow v. Sec'y, Dep't of Corr.</u>, No. 8:08-CV-1834-T-27TGW, 2011 WL 3236034, at *3 (M.D. Fla. July 28, 2011) (Not Reported in F.Supp.2d).   Indeed, "[f]ederal courts are precluded from addressing claims that have been held to be procedurally defaulted under state law." <u>Tower v. Phillips</u>, 7 F.3d 206, 210 (11th Cir. 1993) (per curiam).   <u>See</u> <u>Martinez</u>, 132 S.Ct. at 1316.   Thus, this Court must dismiss the claim or portions of this claim that have been denied on adequate and independent procedural grounds under state law.  <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991), <u>holding modified by</u> <u>Martinez</u>, 132 S.Ct. 1309.

Therefore, the Court concludes that this claim is procedurally defaulted.  Petitioner has not shown cause or prejudice that would excuse any procedural default.   Likewise, he has not shown the applicability of the actual innocence exception.  Since Petitioner is unable to satisfy either of the exceptions to the procedural default bar, the Court finds ground one is procedurally defaulted and barred from review.

Alternatively, ground one is due to be denied.  Although the circuit court found the underlying claim to be procedurally barred, the court, addressed the claim of ineffective assistance of trial counsel on its merits.  Ex. 31 at 836-38.  The court credited trial counsel's testimony from the evidentiary hearing that he considered using the mitigation evidence from the Nassau County case in the Duval County case, but the mitigation evidence "cut both ways" and

was not well received by the Nassau County jury.  Id. at 836-37.
The circuit court explained:

> One example of mitigation evidence cutting
> both ways, was that the Defendant would kill
> animals for the sport of it, and Mr. Davis
> could tell from the reaction of the Nassau
> County jurors that the testimony was having
> the opposite effect of its intended purpose.
> (P.C. Vol. II at 43.)  He also explained that
> because the Nassau County case was stronger
> than the Duval County case, neither he nor the
> Defendant thought it would be beneficial to
> present the mitigation evidence in the weaker
> case when it did not work in a stronger case.
> (P.C. Vol. II at 43-48.)  Mr. Davis testified
> that had the Defendant wanted to present
> mitigation evidence, he would have presented
> it to the jury.  (P.C. Vol. II at 48.)
>
>           . . . .
>
>           Finally, the Defendant claims that the
> doctors who had examined him in the past,
> including Dr. Manuel Chiknis, Dr. Miller, and
> Dr. Barnard, should have testified during the
> penalty phase.  Again, Mr. Davis found that
> this testimony would have cut both ways, and
> he and the Defendant decided that the better
> option was to present the doctors' reports to
> the trial court.  (P.C. Vol. II at 64, 68-69,
> 73.)

Ex. 31 at 836-38.

After full consideration, the circuit court concluded:

> This Court specifically finds that Mr.
> Davis' testimony was both more credible and
> more persuasive than the Defendant's
> allegations.  Laramore v. State, 699 So.2d 846
> (Fla. 4th DCA 1997).  This Court also finds
> that because tactical decisions do not
> constitute ineffective assistance, counsel's
> performance was not deficient.  Songer v.
> State, 419 So.2d 1044 (Fla. 1982); Gonzalez v.
> State, 579 So.2d 145, 146 (Fla. 3d DCA 1991)

45

> ("Tactical decisions of counsel do not
> constitute ineffective assistance of
> counsel."). The Defendant's second claim is
> denied.

Ex. 31 at 838.

The Florida Supreme Court, upon appeal of the post conviction motion, noted that "in order to find counsel was deficient for failing to present mitigation, this Court must either find that counsel failed to investigate mitigation or was deficient in some other way prior to advising Clark." Clark, 35 So.3d at 889. In the federal Petition, Petitioner's key argument is that counsel's deficiency was in his attempt to persuade the jury to consider residual doubt, while failing to prevail upon Petitioner to present mitigation evidence to the jury.[18] Petition at 40-53; Reply at 12.

The Florida Supreme Court, in addressing counsel's decision not to introduce mitigating evidence, focused its review on whether the investigation supporting counsel's actual decision not to introduce mitigating evidence of Petitioner's background was itself reasonable. Clark, 35 So.3d at 890. Upon reflection, assuming arguendo that it would allow Petitioner to pierce his waiver, the

---

[18] "[T]he Constitution 'in no way mandates reconsideration by capital juries, in the sentencing phase, of their residual doubts over a defendant's guilt,' because '[s]uch lingering doubts are not over any aspect of petitioner's character, record, or a circumstance of the offense.'" Hitchcock v. Sec'y, Fla. Dep't of Corr., 745 F.3d 476, 481 (11th Cir. 2014) (quoting Franklin v. Lynaugh, 487 U.S. 164, 174 (1988) (plurality opinion) (quotation marks omitted)).

Florida Supreme Court found neither deficient performance nor
prejudice. <u>Id</u>. at 891.  The court explained:

> Davis testified that the mitigating evidence
> collected "cut both ways." He further
> testified that both he and Clark agreed it
> would not be beneficial to present such
> evidence in the "weaker" case. Because counsel
> did not fail to investigate mitigation, and
> because Clark was found competent, Davis
> cannot be found deficient for his strategy.
>
> Finally, Clark has failed to establish
> prejudice. The exact same mitigation was
> presented in the Nassau County trial, which
> led to the imposition of the death penalty.
> Although that conviction was overturned by
> this Court on direct appeal, this Court did
> not find that the trial court improperly
> rejected all the mitigation presented.
> Instead, we overturned the sentence because we
> found several of the aggravators unsupported
> by the record. <u>Clark</u>, 609 So.2d at 514-15.

<u>Clark</u>, 35 So.3d at 891.

Of import, the Florida Supreme Court also found that this was
not a case where the trial court failed to consider the mitigation
evidence presented by counsel.  Specifically, it recognized that
trial counsel presented mitigating evidence at the <u>Spencer</u> hearing,
requesting that the trial court take into consideration the reports
from the mental health experts.  The Florida Supreme Court also
found the circuit court took the mental health reports into
consideration in rendering its sentencing decision.  <u>Clark</u>, 35
So.3d at 890-91.

Upon review, the record shows that Petitioner waived his right
to present mitigation evidence.  This decision was made not only

after conferring with counsel, but after Petitioner's thorough and extensive colloquy with the trial court.  As noted by the Supreme Court of Florida, Petitioner was found competent.  Also, even though Petitioner adamantly did not want counsel to present mitigation evidence to the jury, counsel ably presented mitigating evidence to the trial court at the <u>Spencer</u> hearing by submitting reports from the mental health experts, reports which contained an extensive amount of Petitioner's background information. Petitioner was also given an opportunity to address the court, but declined.

The record shows that Mr. Davis thoroughly investigated mitigating evidence prior to trial.  It also shows that the trial court provided Petitioner with repeated opportunities to present mitigation, but Petitioner was steadfast in his decision not to present mitigation to the jury.[19]

The Court recognizes, as recently reiterated by the Eleventh Circuit, that "the primary purpose of the penalty phase is to insure that the sentence is individualized by focusing on the particularized characteristics of the defendant." <u>DeBruce v. Comm'r, Ala. Dep't of Corr.</u>, No. 11-11535, 2014 WL 3427198, at *10 (11th Cir. July 15, 2014) (quoting <u>Brownlee v. Haley</u>, 306 F.3d

---

[19] In hindsight, Petitioner currently wishes that he had presented mitigation evidence to the jury and he obviously regrets his decision to waive the presentation of mitigation evidence; however, he is not entitled to habeas relief.

1043, 1074 (11th Cir. 2002) (internal quotation marks omitted)).
With respect to nonstatutory mitigating circumstances, the United
States Supreme Court in Lockett v. Ohio, 438 U.S. 586 (1978),[20]
concluded that mitigating evidence should include any aspect of a
defendant's character or record and any of the circumstances of the
offense that the defendant proffers as a basis for a sentence less
than death.  See Eddings v. Oklahoma, 455 U.S. 104, 113-15 (1982)
(applying the Lockett rule and explaining that the sentencer may
not refuse to consider or exclude from consideration any relevant
mitigating evidence).  Of import, "'Florida is a weighing State;
the death penalty may be imposed only where specified aggravating
circumstances outweigh *all* mitigating circumstances.'  Parker v.
Dugger, 498 U.S. 308, 318, 111 S.Ct. 731, 738, 112 L.Ed.2d 812
(1991) (citing Fla. Stat. § 921.141(3) (1985)) (emphasis added)."
Hardwick v. Crosby, 320 F.3d 1127, 1165-66 (11th Cir. 2003)
(footnote omitted).  As the record reflects, and the Florida
Supreme Court found, that imbalance is clearly established here.

Mr. Davis testified at the evidentiary hearing that he was an
experienced attorney at the time of Petitioner's trial, having
practiced four years with the Justice Department and then continued

---

[20] In Lockett v. Ohio, 438 U.S. 586, 604 (1978) (footnotes
omitted), the United States Supreme Court held that "the Eighth and
Fourteenth Amendments require that the sentencer . . . not be
precluded from considering, *as a mitigating factor*, any aspect of
a defendant's character or record and any of the circumstances of
the offense that the defendant proffers as a basis for a sentence
less than death."

in private practice.  Ex. 32 at 34-37.  He noted that criminal defense work constituted approximately fifty percent of his practice, including murder cases.  Id. at 35, 37.  He explained that he attended seminars applicable to capital cases, read relevant case law and investigations, and spoke with different lawyers about defending capital cases.  Id. at 36.  Also, he represented Petitioner in his capital case in Nassau County prior to the Duval County capital trial.

Of importance, Mr. Davis attested that the mitigation "cut both ways."  Ex. 32 at 41.  He explained that he had conversations with Petitioner's father, stepmother, and people who knew Petitioner and John Hatch, and their associates.  Id. at 41-42.  Counsel knew that Petitioner's mother had significant psychiatric problems.  Id. at 42.  Mr. Davis had also been informed of Petitioner's upbringing by his family, doctors and others.  Id.  He had been told that Petitioner, as a child, tortured animals, including throwing cats against a wall or applying super glue to their eyes.  Id. at 43.  Counsel further explained that he "could tell from the reaction of jurors in Nassau County that that [the mitigation evidence presented] was probably having the opposite of its intended effect."  Id.  And, of course, the Nassau County jury recommended death after hearing the extensive mitigation evidence.

At trial, Petitioner was represented by experienced defense counsel.  "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was

50

reasonable is even stronger." <u>Chandler v. United States</u>, 218 F.3d 1305, 1316 (11th Cir. 2000) (en banc) (footnote omitted), <u>cert</u>. <u>denied</u>, 531 U.S. 1204 (2001); <u>see</u> <u>Williams v. Head</u>, 185 F.3d 1223, 1229 (11th Cir. 1999) (noting that "[i]t matters to our analysis" whether the attorney is an experienced criminal defense attorney), <u>cert</u>. <u>denied</u>, 530 U.S. 1246 (2000).  Furthermore, a state court's adjudication of an ineffectiveness claim is accorded great deference.

While "[b]oth <u>Strickland</u> and AEDPA prescribe highly deferential review[,]" both apply here; therefore, the "review is doubly so." <u>Kormondy v. Sec'y, Fla. Dep't of Corr.</u>, 688 F.3d 1244, 1274 (11th Cir.) (internal quotations and citations omitted) (finding the record amply supporting the trial court's and the Florida Supreme Court's holdings with respect to counsel's investigation of mitigating evidence, preparation for both phases of trial, and petitioner's agreement with the strategy, including the decision not to produce mitigation evidence, particularly the testimony of his mother), <u>cert</u>. <u>denied</u>, 133 S.Ct. 764 (2012).

> The question "is not whether a federal court believes the state court's determination" under the <u>Strickland</u> standard "was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Schriro</u>, <u>supra</u>, at 473, 127 S.Ct. 1933.  And, because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. <u>See</u> <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's

51

> specificity. The more general the rule, the
> more leeway courts have in reaching outcomes
> in case-by-case determinations").

Knowles v. Mirzayance, 556 U.S. 111, 123 (2009); see also Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004) ("In addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision."), cert. denied, 544 U.S. 982 (2005).

In considering the impact of AEDPA on this Court's review, first, AEDPA recognizes that "[s]tate courts are adequate forums for the vindication of federal rights[.]" Mendoza v. Sec'y, Fla. Dep't of Corr., No. 13-14968, 2014 WL 3747685, at *19 (11th Cir. 2014) (quoting Burt v. Titlow, 134 S.Ct. 10, 15 (2013)). In doing so, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Id. (quoting Burt, 134 S.Ct. at 16). Thus, in order to obtain habeas corpus relief from this Court, Petitioner must show that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. (quoting Harrington v. Richter, 131 S.Ct. 770, 786-87 (2011)). Therefore, this Court's review does not provide "a means of error correction[;]" instead, "the 'purpose of AEDPA is to ensure that federal habeas relief

functions as a guard against extreme malfunctions in the state criminal justice systems[.]'" Id. (quoting Greene v. Fisher, 132 S.Ct. 38, 43 (2011)).

The state courts applied the appropriate standard as set forth in Strickland, and found Petitioner was not entitled to post conviction relief on his claim of ineffective assistance of counsel at the penalty phase of the trial. The Florida Supreme Court affirmed the circuit court's decision. Moreover, it found counsel's performance neither deficient nor prejudicial. Therefore, AEDPA deference is appropriate under these circumstances.

Petitioner has failed to show that the Florida Supreme Court's decision was contrary to, or an unreasonable application of, clearly established federal law. Petitioner waived his right to present mitigation evidence. See Schriro, 550 U.S. at 481 (noting that the petitioner would not have allowed counsel to present any mitigating evidence at sentencing, and concluding that the mitigating evidence would not have changed the result). The circuit court made an extensive inquiry as to Petitioner's decision not to present mitigation to the jury. The record shows that Petitioner understood his waiver and its ramifications. Also of import, "it was *not* clearly established federal law that a defendant's refusal to allow the presentation of mitigating

evidence must be informed and knowing." Allen, 611 F.3d at 764
(citing Schriro, 550 U.S. at 478).

In this case, there certainly was not a failure to investigate
mitigation.  Counsel was prepared to present mitigation to the jury
as he had already gathered the evidence in preparation of both the
Nassau County and Duval County cases.   This is not a situation
where counsel "missed powerful mitigating evidence." Brooks v.
Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1304 (11th Cir. 2013)
(recognizing that in other cases, such as Porter v. McCollum, 558
U.S. 30, 41 (2009) (per curiam); Wiggins v. Smith, 539 U.S. 510
(2003); and Collier v. Turpin, 177 F.3d 1184, 1200 (11th Cir.
1999), counsel failed to conduct a thorough investigation, missing
powerful mitigating evidence), cert. denied, 134 S.Ct. 1541
(2014).[21]   Trial counsel reasoned that the evidence "cut both
ways[,]" his stated rationale for not presenting it the jury.  And
furthermore, there was no prejudice.  The Nassau County jury heard
the mitigation evidence and recommended death.   Notably, this
recommendation occurred without the jury hearing about a similar
murder committed by Petitioner in a different county.  That would
not have been the situation in the Duval County trial, as

---

[21] The Court acknowledges that decisions post-dating the state
court decisions in this case would not form the basis to reverse
the state courts' decisions as clearly established law under AEDPA
consists of the holdings (not dicta) of the Supreme Court's
decisions at the time of the relevant state court decision.
Brooks, 719 F.3d at 1304 n.3.

Petitioner had previously been convicted of murder in Nassau County, an extremely powerful aggravator.

In the case at bar, Mr. Davis made a "*strategic* decision not to present to the jury the mitigation evidence that was unearthed." Reed v. Sec'y, Fla. Dep't of Corr., 593 F.3d 1217, 1243 (11th Cir.), cert. denied, 131 S.Ct. 177 (2010).  As in Reed, counsel "decided to submit mitigation evidence to the state trial judge-but not to the jury." Id.  Defense counsel in Reed believed that based on the nature of the crime, the jurors would not be sympathetic or receptive to the medical and psychiatric evidence; instead, counsel believed they would consider it "to be 'a shallow offer of mitigation[.]'" Id.  In Petitioner's case, Mr. Davis had the opportunity to observe and consider a jury's reaction to the nature of the mitigation evidence presented in Nassau County (the same mitigation evidence that would have been presented in the Duval County case), a murder case with a very similar factual scenario as the one in Duval County.  Upon reflection, Mr. Davis believed that it would be best to present the mitigation evidence to the judge through the medical/psychiatric reports rather than presenting mitigation evidence so disturbing that it would horrify or shock the jury instead of having the desired effect, as evidenced by the Nassau County jury's reaction to the mitigation evidence.  See DeBruce, 2014 WL 3427198, at *12 (recognizing instances where the prejudicial effect of presenting the mitigating evidence "would

have been offset by the harmful effect of the evidence itself or would have opened the door to evidence that was more harmful than helpful[,]" thus discounting the possibility of prejudice) (citing DeYoung v. Schofield, 609 F.3d 1260, 1291 (11th Cir. 2010)).

Moreover, Petitioner was intent on waiving presentation of mitigating evidence to the jury, which was defense counsel's paramount reason for not presenting mitigation to the jury. As in Kormondy, Petitioner declined to present mitigation evidence, even after repeated inquiries by the court. See Kormondy, 688 F.3d at 1282. Also, "Kormondy obviously had a vivid memory of the evidence because he was adamant that he did not want his mother to testify; he had observed how she had been humiliated [in a previous penalty phase]." Id. In the instance case, Petitioner's lengthy colloquies with the court certainly evidence the fact that Petitioner strongly opposed counsel presenting any mitigation evidence to the jury, including even Petitioner's testimony. Indeed, the record shows that Petitioner adamantly refused to present mitigation evidence to the jury. Petitioner knew that he could present mitigation, as he already had done so in the Nassau County murder case, but the mitigation evidence did not persuade the Nassau County jury to recommend life and it consisted of rather disturbing and possibly harmful evidence which could cut both ways.

Upon due consideration, Petitioner is not entitled to habeas relief because the state courts' adjudications of this claim are entitled to deference under AEDPA.  After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of the law.  Nor were the state court adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, ground one is due to be denied.

## B.  Ground Two

**GROUND TWO:** The trial court erred in failing to properly evaluate, consider, find, and weigh mitigating factors.

Petitioner claims that "the trial court did not fulfill its sentencing responsibilities in regard to the consideration of mitigating circumstances[,]" alleging the trial court imposed sentence without weighing the mitigating circumstances.  Petition at 56.  Respondents concede that this claim is exhausted and free from procedurally bar.  Response at 14-15, 22.  Petitioner raised the claim on direct appeal, and it was soundly rejected by the Supreme Court of Florida.  The court held:

> Clark also argues that the trial court erred by failing to consider the mitigating evidence properly and to find that several mitigators had been established. The record is clear, however, that the trial court considered the mitigating evidence, including

> the psychiatric reports as noted in the
> sentencing order. The trial court
> conscientiously performed its duty and decided
> that no mitigators had been established. <u>See</u>
> <u>Sireci v. State</u>, 587 So.2d 450 (Fla. 1991),
> <u>cert</u>. <u>denied</u>, 503 U.S. 946, 112 S.Ct. 1500,
> 117 L.Ed.2d 639 (1992). The record contains
> competent, substantial evidence supporting the
> court's conclusion that Clark's death sentence
> is appropriate. <u>See</u> <u>Ponticelli v. State</u>, 593
> So.2d 483 (Fla. 1991), <u>reversed</u> <u>on</u> <u>other</u>
> <u>grounds</u>, 506 U.S. 802, 113 S.Ct. 32, 121
> L.Ed.2d 5 (1992).

<u>Clark</u>, 613 So.2d at 414.

At the <u>Spencer</u> hearing, Petitioner's counsel requested that three mental health reports be taken into consideration by the court. Ex. 18 at 830. The court agreed to take the reports into consideration. <u>Id</u>. at 831. In its Sentence of Ronald Wayne Clark, the court, under All the Evidence Considered by This Court, states: "[b]efore imposing sentence, this Court has carefully studied and considered all the evidence and testimony at trial and at advisory sentencing proceedings, the applicable Florida Statutes, the case law, and all other factors touching upon this case." Ex. 19 at 207. Under the heading Non-statutory Mitigating Circumstances, the court provided: "[t]here are no other aspects of Ronald Wayne Clark's character or record, nor any other circumstances of the offense, which would mitigate in favor of Ronald Wayne Clark or his

conduct in this matter."[22]  _Id_. at 213.  Finally, under the heading

Findings of the Court, it reads:

> The Court having considered both statutory and non-statutory mitigating circumstances, finds that there are no mitigating circumstances existing which would outweigh or outnumber the statutory aggravating circumstances in this case. Further, there are sufficient and great aggravating circumstances which exist to justify the sentence of death.

_Id_.  _See_ Ex. 19 at 853.

Here, there were no limitations on the mitigating evidence the

sentencer could consider, either by statute or otherwise.[23]  _See_

_Eddings_, 455 U.S. at 114.  Indeed, the trial court did not exclude

any evidence offered by the parties from its consideration.  _Id_. at

115.  Of note, the trial court went to great lengths to insure that

Petitioner had the opportunity to submit his own testimony or other

evidence to the court for its consideration.

Petitioner suggests that the trial court erred by imposing

sentence without weighing the mitigating circumstances.  He bases

this assertion on the fact that the court did not specifically

mention the mental health experts' reports in its oral or written

order pronouncing sentence or provide detailed information with

---

[22] In the Sentence of Ronald Wayne Clark, this is an entirely separate section from the Summarization of Statutory Mitigating Circumstances (F.S. 921.141(6)).  Ex. 19 at 210-13.

[23] Petitioner imposed the only limitation on mitigation evidence presented.

regard to considering and weighing each submission.  As a result, Petitioner claims this is clear evidence that the capital sentencer failed to consider and give effect to the mitigation presented.

Although the court may not refuse to consider the evidence, it is free to conclude that it should be given little or no weight or find it is not mitigating in nature.  The Eleventh Circuit succinctly explained what is constitutionally required of the sentencer:

> The Constitution requires that the sentencer be allowed to consider and give effect to evidence offered in mitigation, but it does not dictate the effect that must be given once the evidence is considered; it does not require the sentencer to conclude that a particular fact is mitigating or to give it any particular weight.

Schwab v. Crosby, 451 F.3d 1308, 1329 (11th Cir. 2006) (citing Harich v. Wainwright, 813 F.2d 1082, 1101 (11th Cir. 1987), Eddings, 455 U.S. 104, and Lockett, 438 U.S. 586), cert. denied, 549 U.S. 1169 (2007)).  In sum, although the court must consider the nonstatutory mitigating evidence, it is not required to accept it as a factor or give it any particular weight.

In the instant case, the trial court did everything it was constitutionally required to do.  This Court should not re-evaluate the weight given these factors, a determination which is left to the state courts as long as the death penalty statute and sentencing hearing complied with constitutional requirements.  "To the extent [Petitioner] contends that the mitigating circumstance

findings are based on incorrect findings of fact, he has not carried his burden under § 2254(d)(2) of establishing that the decision of this claim 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Schwab, 451 F.3d at 1329 (citation omitted).

With respect to ground two, the presumption of correctness of the state court's factual findings has not been rebutted with clear and convincing evidence. Also, "[i]t is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide." Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001), cert. denied, 537 U.S. 978 (2002). The adjudication of the state court resulted in a decision that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court. Therefore, Petitioner is not entitled to habeas relief on ground two of his Petition because the state court's decision was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. See Response at 61-64.

## C. Ground Three

**GROUND THREE:** The trial court erred in allowing the state to present the facts of Petitioner's prior murder conviction during

the penalty phase solely through hearsay testimony of the lead police investigator.

Respondents assert this ground is procedurally barred. Response at 22, 24. More specifically, they contend that Petitioner failed to "federalize" the claim by relying substantially on state law grounds. Id. at 24. Upon review, however, Petitioner argued on direct appeal that he was denied a fair opportunity to rebut and confront the hearsay evidence resulting in a denial of his constitutional right [presumably to due process] under the Sixth and Fourteenth Amendments to the United States Constitution and the Florida Constitution. Ex. 20 at 39. See Reply at 16. In light of the above, the Court finds that the claim was raised in the federal constitutional sense and presented to the Florida Supreme Court.

In his Memorandum, Petitioner argues that he was unable to challenge the hearsay testimony and he had no way to confront the reliability of the detective's testimony. Memorandum at 36. The Florida Supreme Court found otherwise:

> At the penalty proceeding, the state had a detective testify about Clark's prior conviction in Nassau County of first-degree murder. His testimony included the gist of other witnesses' testimony in that trial, and Clark now argues that this constituted inadmissible hearsay because he had no fair opportunity to rebut it. Subsection 921.141(1), Florida Statutes (1989), allows the introduction of hearsay in penalty proceedings, "provided the defendant is accorded a fair opportunity to rebut any

> hearsay statements." Clark had the opportunity to rebut any hearsay presented by the state. That he did not or could not rebut this testimony does not make it inadmissible. Clark has shown no abuse of the trial court's discretion in admitting this testimony. Cf. Chandler v. State, 534 So.2d 701 (Fla. 1988), cert. denied, 490 U.S. 1075, 109 S.Ct. 2089, 104 L.Ed.2d 652 (1989).

Clark, 613 So.2d at 415.

Upon review, during the penalty phase, the state called Lieutenant Charles P. Calhoun to testify about Petitioner's first degree murder conviction from Nassau County. Ex. 11 at 771. Defense counsel made a hearsay objection. Id. at 773-74. The state provided the court with state case law holding hearsay admissible during the penalty phase, as long as the defendant is afforded an opportunity to rebut any hearsay statement. Id. The trial court overruled the objection. Id. at 775. Mr. Davis cross examined Lieutenant Calhoun. Id. at 785. During cross, the detective confirmed that John David Hatch was present during the homicide and received a prison sentence for his participation after the fact. Id. Thereafter, the state introduced the judgment and sentence in Nassau County Case No. 90-186-CF, which the court received in evidence. Id. at 786.

Again, there is a presumption of correctness, under 28 U.S.C. § 2254(e)(1), in the determination of factual issues by the state court. The Florida Supreme Court found that Petitioner certainly had the opportunity to rebut any hearsay presented by the state.

Petitioner has not rebutted this presumption by clear and convincing evidence.

This Court finds, pursuant to AEDPA, there is a qualifying decision from the Florida Supreme Court.  Upon a thorough review of the record and the applicable law, it is clear that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Petitioner is not entitled to relief on the basis of this claim.

And, in the alternative, Petitioner is not entitled to habeas relief on the basis of ground three.  Petitioner received all the process to which he was entitled.  He clearly had the opportunity to rebut the testimony of the detective and failed to do so.  The Court finds there was no constitutional violation and ground three is due to be denied.

## D.  Ground Four

**GROUND FOUR:** Petitioner was deprived of his rights to due process under the Fourteenth Amendment to the United States Constitution, as well as his rights under the Fifth, Sixth, and Eighth Amendments, because the state withheld material, exculpatory evidence, and/or presented misleading evidence.

Respondents assert that ground four is procedurally barred because Petitioner failed to raise the claim on appeal from the denial of his post conviction motion.     Response at 22, 24. Exhaustion requires that an appeal be taken from the denial of a post conviction motion. <u>Leonard v. Wainwright</u>, 601 F.2d 807, 808 (5th Cir. 1979) (per curiam).   The circuit court denied the 3.850 motion.  Ex. 31 at 826-59.  Petitioner raised two issues on appeal, ineffective assistance of counsel and newly discovered evidence. Ex. 33.  The Florida Supreme Court affirmed the post conviction court's order denying relief.  <u>Clark</u>, 35 So.3d at 883, 893; Ex. 35.

Here, Petitioner was required to file an appeal brief because he received an evidentiary hearing on his post conviction motion. Rule 9.141(b)(3)(C), Fla. R. App. P.   Although counsel filed an appeal brief, he did not brief the claim raised at bar, electing to brief different issues.  <u>See</u> <u>Cortes v. Gladish</u>, 216 F. App'x 897, 899 (11th Cir. 2007) (per curiam) (finding failure to address issues in an appellate brief would constitute a waiver only if the Petitioner received an evidentiary hearing on a Rule 3.850 motion); <u>Rogers v. Sec'y, Dep't of Corr.</u>, No. 8:07-CV-1375-T-30TGW, 2010 WL 668261, at *53 (M.D. Fla. Feb. 19, 2010) (not reported in F.Supp.2d) (citing <u>Cortes</u> and finding Rogers waived and defaulted his claim by not briefing the claim, after receiving an evidentiary hearing on his Rule 3.851 motion in state court); <u>Johnson v. McNeil</u>, No. 4:08-cv-00221-MP-MD, 2009 WL 4042975, at *6 (N.D. Fla.

Nov. 20, 2009) (not reported in F.Supp.2d) (Report and Recommendation citing <u>Cortes</u> for the proposition that "had the petitioner received an evidentiary hearing on his Rule 3.850 motion, his failure to address issues in his appellate brief would constitute a waiver of those issues, and they would be considered procedurally defaulted"); <u>Williams v. McDonough</u>, No. 8:02-CV-965-T-30MAP, 2007 WL 2330794, at *2 (M.D. Fla. Aug. 14, 2007) (not reported in F.Supp.2d) (finding Petitioner received an evidentiary hearing on his Rule 3.850 motion, and "[t]herefore, Petitioner was required to file a brief, he did file a brief, and his failure to address [the grounds] in his brief constitutes a waiver of those issues.").

Petitioner, in his Reply, asks this Court to excuse this failure because Petitioner fairly presented the claim through his pro se pleadings. Reply at 20, 24. He states that he was not prohibited from doing so because the Florida Supreme Court's decision prohibiting the filing of death-sentenced pro se appellate pleadings was not extended to death-sentenced pro se appellants of post conviction appeals until 2011, pursuant to <u>Gordon v. State</u>, 75 So.3d 200, 203 (Fla. 2011) (per curiam) (footnote omitted). He further relies on <u>Hitchcock v. Sec'y Dep't of Corr.</u>, 360 F. App'x 82, 86 (11th Cir. 2010) (recognizing that a petitioner may exhaust his state court remedies by presenting the ground in a pro se supplemental brief, relying on <u>McBride v. Estelle</u>, 507 F.2d 903,

904 (5th Cir. 1975) (per curiam)),[24] <u>distinguished</u> <u>by</u> <u>Hall</u> <u>v.</u> <u>Tucker</u>, No. 3:10cv71/MCR/MD, 2011 WL 7039936, at *13 (N.D. Fla. Oct. 5, 2011) (finding <u>Hitchcock</u> inapplicable because petitioner never filed a motion to discharge his attorney or any motion to present additional claims), <u>report</u> <u>and</u> <u>recommendation</u> <u>adopted</u> <u>by</u> No. 3:10cv71/MCR/MD, 2012 WL 122599 (N.D. Fla. Jan. 15, 2012).

Under these particular circumstances, liberally construing Petitioner's pro se pleadings submitted to the state court, this Court finds Petitioner "satisfied the fair presentation requirement permitting review in federal habeas court."[25]   <u>Hall</u>, 2011 WL 7039936, at *13 (citation omitted).   Therefore, the Court will address ground four and not apply a procedural bar to this claim.[26]

---

[24] <u>Hitchcock</u> is an unpublished, non-binding decision of the Eleventh Circuit.  The Court hereinafter refers to this decision as <u>Hitchcock</u>.

[25] Alternatively, to the extent the holding in <u>Hitchcock</u> is inapplicable, this ground is procedurally defaulted.  <u>See</u> Response at 22, 24.  Petitioner has not shown cause or prejudice that would excuse any procedural default.  Likewise, he has not shown the applicability of the actual innocence exception.  Since Petitioner is unable to satisfy either of the exceptions to the procedural default bar, the Court finds ground four is procedurally defaulted and barred from review.

[26] In addition, Petitioner submits that the state should be estopped from relying on the collateral proceedings in state court as erecting any procedural bars to the constitutional challenges. Memorandum at 41.  Generally, "lack of an attorney and attorney error in state post-conviction proceedings do not establish cause to excuse a procedural default." <u>Lambrix v. Sec'y, Fla. Dep't of Corr.</u>, No. 13-11917, 2014 WL 2884606, at *10 (11th Cir. June 26, 2014) (citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 757 (1991)). <u>Martinez v. Ryan</u>, 132 S.Ct. 1309 (2012) set forth a narrow exception to this holding in the limited circumstances where

Petitioner complains that exculpatory information did not reach the jury because the state unreasonably failed to disclose its existence.  Petition at 62.  In this regard, the Court looks to the circuit court's decision with respect to the <u>Brady</u> and <u>Giglio</u> claims.  Regarding the <u>Brady</u> claim, the circuit court first provided the background information underlying the claim:

> In the first subclaim, the Defendant avers that the State committed <u>Brady</u> violations when it failed to disclose certain exculpatory statements.  These statements include (1) a January 21, 1990 written statement by co-Defendant John David Hatch to the Nassau County Sheriff; (2) a June 27, 1990 statement by Hatch to State Attorney Howard Maltz that Hatch and the Defendant were "too drunk to hold a shovel"; and (3) a May 9, 1990 Nassau County Jail Incident Report written by Nassau County Sheriff's Officer Jeanette Sares, who observed Hatch personally threatened [sic] to kill Clark by breaking his neck in front of the officer.

Ex. 31 at 832 (footnote omitted).

---

ineffective assistance of counsel claims must be raised in an initial-review collateral proceeding, the petitioner failed to properly raise the ineffectiveness claim in that proceeding, the petitioner did not have counsel or counsel was ineffective, and failing to excuse the petitioner's default would result in the loss of a substantial ineffective-trial-counsel claim. <u>Lambrix</u>, 2014 WL 2884606, at *10 (citation omitted).  This exception has been narrowly extended to cases where state law permits ineffective-trial-counsel claims on direct appeal but it is virtually impossible to raise such a claim on direct appeal due to state procedures. <u>Id</u>. (citing <u>Trevino v. Thaler</u>, 133 S.Ct. 1911, 1918-21 (2013)).  The <u>Martinez</u> rule "does not concern errors in other kinds of proceedings, including appeals from initial-review collateral proceedings[.]" <u>Id</u>. at *11 (internal quotation omitted) (citations omitted).

Of import, the circuit court relied on the appropriate United States Supreme Court authority in reaching its decision:

> Initially, this Court notes that in order to prevail on a <u>Brady</u> claim, a defendant must show: "[1] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued." <u>Jennings v. State</u>, 782 So.2d 853, 856 (Fla. 2001). The burden is on the Defendant to demonstrate the evidence satisfied each of these elements. <u>Wright v. State</u>, 857 So.2d 861, 870 (Fla. 2003). The prejudice prong is satisfied if the Defendant shows the withheld evidence is material. Under <u>Brady</u>, the undisclosed evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985). The mere possibility that undisclosed items or information may have been helpful to the defense in its own investigation does not establish the materiality of the information. <u>Wright v. State</u>, 857 So.2d 861, 870 (Fla. 2003). Further, "[t]here is no <u>Brady</u> violation where the information is equally accessible to the defense and the prosecution, or where the defense either had the information or could have obtained it through the exercise of reasonable diligence." <u>Freeman v. State</u>, 761 So.2d 1055, 1062 (Fla. 2000) (quoting <u>Provenzano v. State</u>, 616 So.2d 428, 430 (Fla. 1993)).

Ex. 31 at 832-33.

Regarding the January 21, 1990 Hatch statement, the circuit court found that in at least two of the state's responses, the

state disclosed statements of co-defendant Hatch.  <u>Id</u>. at 833.  The court noted that Mr. Brody did not cross examine Hatch as to the veracity of his written statement.  <u>Id</u>.  With respect to the June 27, 1990 statement, the court said there was nothing before it showing that the state actually suppressed the statement.  <u>Id</u>.  It further noted that the state had disclosed statements by Hatch in response to a demand for discovery.  <u>Id</u>.  Finally, in regard to Sares' May 9, 1990 Incident Report, the court noted that the state provided some statements by Hatch, and Mr. Brody did not pursue the matter on cross examination of Hatch at the evidentiary hearing. <u>Id</u>. at 834.

Finally, the circuit court concluded:

> The Defendant has failed to establish that the State committed the alleged <u>Brady</u> violations.  <u>See</u> <u>Gore v. State</u>, 846 So.2d 461, 469-70 (Fla. 2003); <u>Cunningham v. State</u>, 748 So.2d 328 (Fla. 4th DCA 1999) (holding that "[i]t is during the evidentiary hearing that [defendant] must come forward with witnesses to substantiate the allegations raised in the post conviction motion").  Consequently, the first subclaim is denied.

Ex. 31 at 834.

"Under <u>Brady</u>, the State violates a defendant's right to due process if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment."  <u>Smith v. Cain</u>, 132 S.Ct. 627, 630 (2012) (citing <u>Brady</u>, 373 U.S. at 87).  In expounding upon the meaning of material evidence within the parameters of the <u>Brady</u> decision, the Supreme Court said:

70

> We have explained that "evidence is 'material' within the meaning of <u>Brady</u> when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." <u>Cone v. Bell</u>, 556 U.S. 449, 469–470, 129 S.Ct. 1769, 173 L.Ed.2d 701 (2009). A reasonable probability does not mean that the defendant "would more likely than not have received a different verdict with the evidence," only that the likelihood of a different result is great enough to "undermine[ ] confidence in the outcome of the trial." <u>Kyles v. Whitley</u>, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (internal quotation marks omitted).

<u>Smith</u>, 132 S.Ct. at 630.

The Eleventh Circuit also elaborated on the principle set forth in <u>Brady</u>:

> In <u>Brady v. Maryland</u>, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963), the Supreme Court enunciated the now well-established principle that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process when the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." The duty to disclose exculpatory evidence is applicable even in the absence of a request by the defendant, and it encompasses impeachment material as well as exculpatory evidence. <u>See</u> <u>Strickler v. Greene</u>, 527 U.S. 263, 280, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999). . . . The Supreme Court has condensed these basic principles into three components, each of which is necessary to establish a <u>Brady</u> violation: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." <u>Strickler</u>, 527 U.S. at 281–82, 119 S.Ct. at 1948.

71

Maharaj v. Sec'y, Dep't of Corr., 432 F.3d 1292, 1309 (11th Cir. 2005), cert. denied, 549 U.S. 819, 1072 (2006).

Even assuming this evidence was exculpatory or impeaching, Petitioner has failed to show that the state suppressed the evidence.  More importantly, the Court is not convinced that prejudice ensued, assuming arguendo the state suppressed the evidence.

Petitioner has failed to show the evidence is material. Instead, Petitioner asserts that the information would have been helpful to the defense "to alert counsel to avenues worthy of investigation and presentation to the jury."[27]  Petition at 62. This simply does not satisfy the prejudice prong of Bradley. Indeed, "[t]he evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.   A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United State v. Bagley, 473 U.S. 667, 682 (1985).

The statements at issue concerned peripheral matters:  whether Petitioner and Hatch spoke at the Nassau County Jail; Petitioner's

---

[27] Very recently, the Eleventh Circuit recognized that a Brady claim "fails when it is only speculative that the materials at issue would have led to exculpatory information." Wright v. Sec'y, Fla. Dep't of Corr., No. 13-11832, 2014 WL 3809389, at *20 (11th Cir. Aug. 4, 2014) (citation omitted) (mandate has not issued).

level of intoxication, which was presented through the admission of other evidence (including the reading of Petitioner's statement to the police); and, the various details contained in Hatch's statements to the authorities or the prosecutor. The mere possibility that the alleged undisclosed evidence may have been helpful to the defense and its investigation does not evince the materiality of the information.

Ultimately, the Court is not convinced that the evidence at issue is material as to guilt or punishment. Even if the above-mentioned evidence had been disclosed, the result of the proceeding would have remained the same. The jury found Petitioner guilty of felony murder, not premeditated murder. Of note, the jury may have been persuaded that Petitioner was not the shooter (although highly unlikely under these circumstances),[28] or the jury was persuaded that the killing was not premeditated. Regardless, likelihood of a different result is not great enough to undermine confidence in the outcome of the trial. Thus, Petitioner has not met the third requirement because no prejudice ensued. In sum, there is no likelihood that had the stated evidence been disclosed there would have been a reasonable probability of a different result.

---

[28] In <u>Tison v. Arizona</u>, 481 U.S. 137, 158 (1987), the United States Supreme Court found that a death sentence was permissible under a felony murder theory if the defendant substantially participated in the felony, and this was combined with reckless indifference to human life.

73

In the alternative, to the extent AEDPA deference is due, this Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Petitioner is not entitled to habeas relief on the <u>Brady</u> claim.

Now, the Court will address Petitioner's <u>Giglio</u> claim. Petitioner claims that the state presented false and misleading testimony, allowing Mary Hatch and Billy Jo Beaman, Hatch's sister-in-law and mother, respectively, to testify that Petitioner had the gun on the day of the offense. Petition at 62. Petitioner also complains that the state allowed Mr. Hatch to say that his statement at the time of his arrest was consistent with his statement at trial. <u>Id</u>.

The circuit court referenced the seminal Supreme Court case which sets forth the appropriate standard to prevail on this type of claim:

> In order to establish a <u>Giglio</u> violation, the Defendant must show that (1) the testimony given was false; (2) the prosecutor knew the testimony was false; and (3) the statement was material. <u>Guzman v. State</u>, 868 So.2d 498, 505 (Fla. 2003). Under <u>Giglio</u>, when a prosecutor knowingly uses perjured testimony, or fails to correct what the prosecutor later learns is false testimony, the false evidence is material, "if there is any reasonable

> likelihood that the false testimony could have
> affected the judgment of the jury." <u>Guzman</u>
> 868 So.2d at 506 quoting from <u>United States v.</u>
> <u>Agurs</u>, 427 U.S. 97, 103 (1976).

Ex. 31 at 835.

Of paramount importance, the circuit court found that Petitioner "failed to present any competent testimony or evidence at the evidentiary hearing to support his contentions that the witnesses' testimony at trial was false or misleading." <u>Id</u>. The court explained its conclusion:

> The only witness the Defendant presented at
> the evidentiary hearing in support of the
> <u>Giglio</u> claim concerned the testimony of co-
> Defendant Hatch. Michael Thompson, an inmate
> and law clerk who helped the Defendant with
> his post-conviction "paperwork," testified
> that before meeting the Defendant, Thompson
> had been housed at a different correctional
> facility with Hatch. (P.C. Vol. II at 15-17.)
> Thompson testified that a year after he became
> friends with Hatch, Hatch admitted that he was
> [the] one that shot the victim, Ronald Willis.
> (<u>Id.</u>) It was not until thirteen years later,
> when Thompson was housed in the same
> correctional facility as the Defendant and
> started helping with his case, that Thompson
> realized the connection between Hatch and the
> Defendant. (P.C. Vol. II at 15-17, 22-24.)
> Thompson also testified that he was serving
> nine consecutive life sentences. (P.C. Vol.
> II at 17-18.)

Ex. 31 at 835.

The circuit court continued:

> As to the substance and veracity of his
> own trial testimony, Hatch testified at the
> evidentiary hearing that his trial testimony
> was true and accurate and that he had never
> discussed the Defendant's case with Thompson.

> (P.C. Vol. II at 153-54.)  Notably, Mr. Brody
> did not cross examine Hatch at the evidentiary
> hearing.   (P.C.  Vol.  II  at  154.)    The
> Defendant also failed to present any testimony
> or  evidence  at  the  evidentiary  hearing  to
> support his contentions that the State knew
> the  witnesses'  testimony  was  false.    This
> Court finds that the Defendant has failed to
> establish any <u>Giglio</u> violations in the instant
> claim.    Accordingly,  the  Defendant's  first
> claim is denied.

Ex. 31 at 836.

Recently,  the  Eleventh  Circuit  addressed  a  contention  of

pervasive government misconduct, relating that,

> "<u>Brady</u> requires the prosecution to turn
> over to the defense any exculpatory evidence
> in its possession or control."  <u>United States</u>
> <u>v. Jordan</u>, 316 F.3d 1215, 1226 n.15 (11th Cir.
> 2003).  "<u>Giglio</u> requires the prosecution to
> turn  over  to  the  defense  evidence  in  its
> possession or control which could impeach the
> credibility  of  an  important  prosecution
> witness."  <u>Id</u>. at 1226 n.16.  "Impeachment
> evidence should be disclosed in time to permit
> defense  counsel  to  use  it  effectively  in
> cross-examining the witness."  <u>Id</u>. at 1253.

<u>United States v. McAnalley</u>, 535 F. App'x 809, 814 (11th Cir. 2013)

(per curiam).

Based  on  the  record  before  the  Court,  Petitioner  failed  to

establish  that  the  state  presented  false  testimony  at  trial.

Indeed,  Petitioner  has  failed  to  show  that  the  prosecution's  case

included  any  perjured  testimony.    With  reference  to  the  alleged

perjured testimony,

> "<u>Giglio</u> error, a species of <u>Brady</u> error,
> occurs  when  'the  undisclosed  evidence
> demonstrates  that  the  prosecution's  case

included perjured testimony and that the prosecution knew, or should have known, of the perjury.'" Davis v. Terry, 465 F.3d 1249, 1253 (11th Cir. 2006) (quoting Ventura v. Att'y Gen., Fla., 419 F.3d 1269, 1276-77 (11th Cir. 2005), cert. denied, --- U.S. ----, 127 S.Ct. 3010, 168 L.Ed.2d 728 (2007)).  To prevail on a Giglio claim, a petitioner must establish that "(1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony; and (2) such use was material i.e., that there is 'any reasonable likelihood' that the false testimony 'could . . . have affected the judgment.'"  Id. at 1253 (quoting Giglio, 405 U.S. at 154, 92 S.Ct. at 766).  This standard of materiality is equivalent to the Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), "harmless beyond a reasonable doubt" standard. Bagley, 473 U.S. at 679 n.9, 105 S.Ct. at 3382 n.9.  The disclosure requirement ensures that "'the jury knows the facts that might motivate a witness in giving testimony.'"  Brown v. Wainwright, 785 F.2d 1457, 1465 (11th Cir. 1986) (quoting Smith v. Kemp, 715 F.2d 1459, 1467 (11th Cir. 1983)).  Accordingly, the prosecution has a duty to disclose evidence of promises made to a witness in exchange for testimony.  Giglio, 405 U.S. at 154-55, 92 S.Ct. at 766; Tarver v. Hopper, 169 F.3d 710, 716 (11th Cir. 1999).

Ford v. Hall, 546 F.3d 1326, 1331-32 (11th Cir. 2008), cert. denied, 559 U.S. 906 (2010).

With respect to Mr. Hatch's trial testimony, the record includes the following.  On direct, he testified that he had three prior felonies.  Ex. 5 at 437.  He admitted he was in jail and was arrested along with Petitioner for the murder of Ronald Lewis (Nassau County case).  Id. at 438.  He also stated that he pled guilty to second degree murder in exchange for a sentence of

twenty-five years.  _Id_.  He further stated that his sentence was conditioned upon his testifying truthfully in the Duval County case.  _Id_.  Finally, he said that he had been warned that if it were later determined that he had not testified truthfully in the Duval County case, his charge would be elevated back to first degree murder.  _Id_. at 439.

After providing his testimony as to the events of the Duval County case, Mr. Hatch confirmed that the statement he provided was the same as the statement he provided to Detective Jesonek of the Jacksonville Sheriff's Office.  _Id_. at 474-75.  The jury actually heard both Mr. Hatch's testimony and his statement as provided to Jerry Jesonek.  _Id_. at 550-53.  Therefore, the jury was provided with the content of both statements and could readily assess the consistency or inconsistency of the statements.  To aid the jury in its comparison, Mr. Davis cross examined Mr. Hatch concerning his statement to Detective Jesonek.  _Id_. at 508-11.  Mr. Davis also asked questions which elicited Mr. Hatch's admission that the gun would have been empty at the time he claims Petitioner pointed it at him after the shooting of Mr. Willis.  _Id_. at 511.  Defense counsel also effectively cross examined Mr. Hatch using Hatch's pre-trial deposition.  _Id_. at 518-19.  Finally, Mr. Davis extensively cross examined Mr. Hatch regarding his negotiated plea. _Id_. at 519-20.

Based on the record, there was full disclosure that Mr. Hatch had a deal with the state for his testimony.  Thus, there was no prejudice to Petitioner in that regard.  See McAnalley, 535 F. App'x at 814 (finding no substantial prejudice with respect to a claim of government misconduct because the violation was handled after direct and the relevant information of a plea deal was revealed to the jury).  Morever, at trial, Mr. Hatch's testimony was thoroughly vetted through examination and cross examination, and his statement was read into the record, allowing the jury to compare his trial testimony to his previous statement.   In addition, at the evidentiary hearing, Mr. Hatch attested that this trial testimony was true and accurate.

With regard to the testimony of Mary Helen Hatch and Billy Jo Beaman, the record shows the following.  Both attested that Petitioner had the gun in his possession at different times during the evening. Ex. 5 at 526.  Ms. Hatch testified that early in the evening, both Mr. Hatch and Petitioner handled the gun, but Petitioner put it in his pocket when they departed for Jacksonville.  Id.  Ms. Beaman testified that Petitioner had the gun at the Rosemont Apartments during the late evening hours of January 12, 1990 and/or early morning hours of January 13, 1990 (after the commission of the murder).[29]  Id. at 531-32.  Mr. Hatch

_____

[29] Joseph Lee Strickland testified that on January 13, 1990 (after the commission of the murder), Mr. Hatch pulled the gun out, but Mr. Hatch said that Petitioner would have to give him money to

testified that Petitioner had the gun when they headed to Jacksonville, id. at 441-42, but Mr. Hatch admitted that the gun changed possession as the men were heading down Main Street, taking turns shooting at signs, beer bottles, and beer cans. Id. at 443. But, Mr. Hatch testified that when they were picked up by the victim, Ronald Willis, Petitioner had the gun back in his possession. Id. at 443-44.

Of import, Petitioner testified at trial. Ex. 6 at 646. He admitted that he had two prior felonies. Id. at 647. On cross, he testified that Ms. Beaman's testimony was incorrect, that he did not have the gun at the Rosemont Apartments. Id. at 652. Finally, on cross, Petitioner testified that Hatch shot the victim. Id. at 664.

As noted above, both Mary Helen Hatch's testimony and Mr. Hatch's testimony referred to both Petitioner and Mr. Hatch handling the gun during the evening of the shooting. Of course, Petitioner's testimony directly contradicted Mr. Hatch's testimony that Petitioner had the gun in his possession at the time of the shooting. Petitioner has failed, however, to show that the testimony given by the witnesses was false, or that the prosecutor knew the testimony was false.

But, even assuming a Giglio violation occurred,

---

get the gun back. Ex. 5 at 425-26.

> When considering a <u>Giglio</u> claim on federal
> habeas review, a petitioner must also satisfy
> the standard set forth in <u>Brecht v.
> Abrahamson</u>, 507 U.S. 619, 113 S.Ct. 1710, 123
> L.Ed.2d 353 (1993). Specifically, a petitioner
> must demonstrate that the constitutional
> error—here the <u>Giglio</u> violation—"had
> substantial and injurious effect or influence
> in determining the jury's verdict." <u>Id</u>. at
> 637, 113 S.Ct. at 1722 (internal quotation
> marks omitted). <u>Brecht</u> can prevent a
> petitioner from obtaining habeas relief even
> if he can show that, were he raising a <u>Giglio</u>
> claim in the first instance on direct appeal
> before a state appellate court, he would be
> entitled to relief. <u>See Guzman v. Sec'y, Dep't
> of Corr.</u>, 663 F.3d 1336, 1355–56 (11th Cir.
> 2011) (finding a <u>Giglio</u> violation but denying
> habeas relief because the petitioner failed to
> demonstrate the error had a "substantial and
> injurious effect on the outcome of his
> trial").

<u>Rodriquez v. Sec'y, Fla. Dep't of Corr.</u>, No. 11-13273, 2014 WL
2922664, at *20 (11th Cir. June 30, 2014) (only the Westlaw
citation is currently available) (footnote omitted).

Therefore, assuming arguendo there was error, Petitioner has
failed to satisfy the standard set forth in <u>Brecht</u>.[30] Specifically,
he has failed to demonstrate that the alleged error had a
substantial and injurious effect on the outcome of his trial.
Simply, Petitioner's conviction was not rendered unreliable. Thus,
Petitioner is not entitled to habeas relief on the <u>Giglio</u> claim.

Of note, Petitioner complains that although he received an
evidentiary hearing, his post conviction counsel failed to present

---

[30] <u>Brecht v. Abrahamson</u>, 507 U.S. 619 (1993).

81

sufficient evidence or witnesses to support ground four. Memorandum at 41.  Upon review, Petitioner received an evidentiary hearing in state court, and post conviction counsel called two witnesses, Mr. Davis and Mr. Thompson.  Petitioner seeks an evidentiary hearing in this Court to further flesh out his claims, but he is not entitled to another evidentiary hearing.  See 28 U.S.C. § 2254(e)(2); Burgess v. Comm., Ala. Dep't of Corr., 723 F.3d 1308, 1319-20 (11th Cir. 2013); Response at 31-32.  If a petitioner is not diligent in his efforts to develop his claims in state court, he may not receive an evidentiary hearing in federal court unless he can satisfy the provisions of § 2254(e)(2)(A) and (B).  Cullen v. Pinholster, 131 S.Ct. 1388, 1400 n.4 (2011).  Upon review, Petitioner failed to develop the factual basis of his claim before the state post conviction court.  Also, to the extent Petitioner is claiming the ineffective assistance of post conviction counsel, "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."  28 U.S.C. § 2254(I).  See Response at 27-28.

To the extent AEDPA deference is due, Petitioner has failed to show the circuit court's credibility findings were clearly erroneous.  Therefore, AEDPA requires that this Court presume those findings to be correct.  28 U.S.C. § 2254(e)(1).  Since Petitioner

has not rebutted the presumption, the court will give AEDPA deference to the circuit court's findings. The circuit court also found Petitioner failed to support his contentions that the state knew the witnesses' testimony was false. This finding is also entitled to AEDPA deference.

To the extent the <u>Giglio</u> claim was properly raised and rejected by the state courts, the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of his <u>Giglio</u> claim.

## E. Ground Five

**GROUND FIVE:** Petitioner was denied the effective assistance of counsel at the guilt phase of his trial, in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

Generally, Petitioner claims his trial counsel was ineffective for failure to pursue a voluntary intoxication defense during the guilt phase of the trial. Respondents claim there is a procedural bar to ground five. Response at 22, 24. Although conceding that Petitioner did raise a claim of ineffective assistance of counsel in his post conviction motion and on appeal of that motion,

Respondents contend that the deficiency raised in the state courts is entirely different from that raised in the federal Petition. Response at 24.

Petitioner raised a claim of ineffective assistance of trial counsel at the guilt phase in his post conviction motion. The trial court, in a detailed opinion, denied this ground. The Florida Supreme Court affirmed the circuit court's denial of the 3.850 motion. <u>Clark</u>, 35 So.3d 880; Ex. 35 at 22. The Court finds that Petitioner's claim of ineffective assistance of counsel at the guilt phase was adequately exhausted and is not procedurally defaulted.[31]

The circuit court, in addressing this claim, found the following:

> The Defendant asserts that trial counsel should have presented evidence on the Defendant's intoxication including witnesses who could testify to this intoxication. However, the Defendant presented no evidence and no witness testimony in support of this claim at the evidentiary hearing. In fact, Mr. Davis testified that there was no basis for a voluntary intoxication defense because the Defendant had a clear recollection of what happened. (P.C. Vol. II at 76-77.)

---

[31] In the alternative, for the same reasons stated under ground four, liberally considering Petitioner's <u>pro</u> <u>se</u> pleadings submitted to the state court and finding the holding in <u>Hitchcock</u> applicable, the Court finds Petitioner satisfied the fair presentation requirement permitting review in federal court of this ground. <u>See</u> Reply at 34; App. A, B, D, E, F, I. Accordingly, the Court will address ground five and not apply a procedural bar to the claim of ineffective assistance of trial counsel at the guilt phase.

Ex. 31 at 838-39.

Upon consideration of the evidentiary hearing testimony, Mr. Davis said Petitioner was able to relate a clear, cogent version of the events.  Ex. 32 at 75-76.  In counsel's judgment, this fact was inconsistent with a voluntary intoxication defense.  Id. at 76. Also, to make this type of defense ring true for the jury, Petitioner would have to take the stand and admit he was the shooter, something Petitioner adamantly denied.  Id. at 75-76. Mr. Davis stated that, admittedly, Petitioner was drinking, as was his custom, but he was going about his normal affairs.  Id.  Mr. Davis considered using an addictionologist, hoping to claim some sort of blackout state during the events leading up to the shooting of Mr. Willis, but counsel concluded this was not a viable option because Petitioner "had such a clear recollection as to what happened[.]" Id. at 77.

Of import, the defense of voluntary intoxication had already proved unsuccessful in Nassau County.  Ex. 32, Testimony and Proceedings in a Jury Trial (Nassau County) at 439.  Dr. Peter M. Macaluso, M.D., an addictionologist, testified for the defense, as well as several other medical professionals.  Mr. Davis argued the voluntary intoxication defense in closing to the jury.  Id. at 661-64, 666-67.  The jury returned a verdict of guilty of premeditated murder in the first degree despite the thorough presentation of a

voluntary intoxication defense in the guilt phase of the Nassau County case.[32]  Id. at 717.

In the Duval County case, Mary Hatch testified that John Hatch and Petitioner were not intoxicated and falling down drunk at around 8:30 p.m., Friday, January 12, 1990.  Ex. 5 at 526.  Mr. Hatch's statement, read to the jury, stated that he and Petitioner went to the country store and bought beer.  Id. at 550.  Of note, Detective Jesonek read Petitioner's statement to the jury.  Id. at 582-86.  In that statement, Petitioner mentioned that he and David Hatch together drank a twelve pack of beer around 8:00 to 8:30 p.m. Id. at 582-83.  Petitioner said they went to a country store and bought one more beer each.  Id at 583.  Shortly thereafter, they were picked up by Mr. Willis and the offense transpired.  Id.

Obviously, counsel was fully aware that the voluntary intoxication defense did not win the day in the Nassau County case. As noted by Respondents, a voluntary intoxication defense is not often well-received by jurors.  Pietri v. Fla. Dep't of Corr., 641 F.3d 1276, 1284 (11th Cir. 2011) (such evidence may have a counter-productive effect on the jury, and is "generally not a successful defense."), cert. denied, 132 S.Ct. 1551 (2012).  Indeed, the

---

[32] The Nassau County jury returned a verdict of guilty of premeditated murder despite the fact that Petitioner presented extensive evidence that he was inebriated.  The record shows that in the Nassau County case, Petitioner testified that he smoked crack,  took a number of different pills, drank liquor, and drank an extremely large quantity of beer before the offense.  Ex. 32 at 482-92.

record shows that it was not a successful defense in the Nassau
County case.

The Court finds that Petitioner's counsel was not ineffective
for failure to pursue more fully a voluntary intoxication defense
in the Duval County case. Mr. Davis was obviously aware of the
defense, as he presented it in the Nassau County case. Counsel
reasonably decided not to present it in the Duval County case, a
case in which Petitioner denied shooting the victim but admitted to
having a very accurate memory of the events and related his
detailed version of the events to Detective Jesonek and to defense
counsel. See Response at 73-74. Moreover, even if counsel were
ineffective for failure to present a voluntary intoxication
defense, Petitioner cannot demonstrate prejudice under these
circumstances.

In ground five, Petitioner also asserts that other witnesses
should have been called to testify concerning Petitioner's long-
standing substance abuse problem, his intoxication at the time of
the offense, and his other psychological disorders. Petition at
66. He asserts that this testimony would have been relevant as to
various issues, including specific intent, diminished capacity,
competency, insanity, and his ability to make knowing and voluntary
waivers. Id.

The circuit court addressed this ground and stated:

> The Defendant also claims that trial
> counsel should have presented evidence and

87

> witnesses regarding the Defendant's long-
> standing substance abuse and resulting mental
> health problems.   However, the Defendant
> presented no evidence and no witness testimony
> in support of this claim at the evidentiary
> hearing.   Notably, Dr. Elizabeth Tannahill
> Glen testified that the Defendant suffered
> from no extreme emotional or mental
> disturbance.  (P.C. Vol II at 103-122.)  She
> also stated that she found the Defendant to
> have a good, strong IQ, and that he was a
> bright guy.  (P.C. Vol II at 103.)

Ex. 31 at 839.  The Florida Supreme Court affirmed the decision of the circuit court.  Ex. 35 at 22.

In evaluating the performance prong of the <u>Strickland</u> ineffectiveness inquiry, there is a strong presumption in favor of competence.  Again, the presumption that counsel's performance was reasonable is even stronger when counsel is an experienced criminal defense attorney.  The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  <u>Strickland</u>, 466 U.S. at 690.  "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'"  <u>Rompilla v. Beard</u>, 545 U.S. 374, 381 (2005) (citations omitted).

Mr. Davis was an experienced criminal defense attorney, as related by his testimony at the evidentiary hearing.  He practiced four years with the Justice Department, and approximately fifty per cent of his private practice work concerned criminal defense cases.  Ex. 32 at 34-37.  His criminal defense work included murder cases,

although Petitioner's Nassau County case was his first capital case. Significantly, he prepared himself to handle capital cases by attending seminars, reading relevant case law and investigations, and by speaking with defense lawyers about defending capital cases. Id. at 36.

Of note, counsel presented extensive medical testimony in the Nassau County case and it was unavailing. Apparently, Mr. Davis seriously considered doing the same in the Duval County case. The record shows that he filed a Notice of Intent to Rely on Defense of Insanity at Trial. Mr. Davis requested that Petitioner be examined for competency. Upon request, the court appointed medical experts to examine Petitioner. Also upon request, the court appointed Dr. Macaluso to examine Petitioner to aid counsel in preparation of the defense. In addition, Dr. Miller and Dr. Barnard found Petitioner competent to proceed and not insane. After due consideration of all of the expert information he gathered, Mr. Davis announced pretrial that the defense was withdrawing the insanity defense.

The record shows that defense counsel conducted an adequate investigation and obtained a number of experts to aid him in his decision-making. Indeed, he sought the appointment of experts, reviewed and considered their reports, and ultimately decided not to pursue the insanity defense or to present the mental health information to the jury during the guilt phase of the trial. Under these circumstances, trial counsel's performance was not outside

the wide range of professional competence.  Petitioner has not overcome the strong presumption that counsel's performance was reasonable.  Petitioner has failed to establish that "no competent counsel would have taken the action that his counsel did take." Osborne v. Terry, 466 F.3d 1298, 1306 (11th Cir. 2006) (citation and internal quotation omitted), cert. denied, Osborne v. Hall, 552 U.S. 841 (2007).

Petitioner also claims his counsel performed deficiently when he failed to conduct an adequate investigation and contact experts in serology, toxicology and forensic science.  Petition at 67. Petitioner raised this issue in his post conviction motion, and the circuit court denied the claim holding:

> The Defendant also claims that trial counsel should have called unspecified experts in serology, toxicology, and forensic science, to cast doubt on the physical evidence in the case.  To the extent the Defendant claims that Mr. Davis should have contacted or presented witnesses, the Defendant's claim is denied pursuant to Nelson v. State, 875 So.2d 579, 583-84 (Fla. 2004), as the Defendant's claim is facially insufficient.  Further, the Defendant presented no evidence and no witness testimony in support of this claim at the evidentiary hearing.  The only testimony on this issue was from Mr. Davis who stated that he did not hire a blood splatter expert because he did not see the need.  (PC Vol. II at 61.)  This was especially true because Mr. Davis did not know who was wearing what clothes when these crimes took place. Further, the Defendant either was wearing or had possession of the victim's boots when he was arrested.  (P.C. Vol. II at 77-78.)

Accordingly, the Defendant has failed to prove these claims under the theory of ineffective assistance of counsel as it relates to trial counsel's failure to present other evidence and witnesses during the guilt phase. See Gore v. State, 846 So.2d 461, 469-70 (Fla. 2003); Cunningham v. State, 748 So.2d 328 (Fla. 4th DCA 1999) (holding that "[i]t is during the evidentiary hearing that [defendant] must come forward with witnesses to substantiate the allegations raised in the post conviction motion").

This Court also specifically finds that Mr. Davis' and Dr. Glen's testimony was both more credible and more persuasive than the Defendant's allegations. Laramore v. State, 699 So.2d 846 (Fla. 4th DCA 1997). This Court finds that because tactical decisions do not constitute ineffective assistance, counsel's performance was not deficient. Songer v. State, 419 So.2d 1044 (Fla. 1982); Gonzalez v. State, 579 So.2d 145, 146 (Fla. 3d DCA 1991) ("Tactical decisions of counsel do not constitute ineffective assistance of counsel.").   The Defendant's third claim is denied.

Ex. 31 at 839-40.  The Supreme Court of Florida affirmed.  Ex. 35 at 22.

At the evidentiary hearing, Mr. Davis testified that he did not recall that the state made blood splatter an issue in the case. Ex. 32 at 60-61.  He recalled that the arrests were made several days later, and the co-defendants had changed clothes and bathed. Id. at 61.  Mr. Davis remembered there was testimony that the co-defendants rode around in bloody clothes, but he did not recall the clothing being introduced into evidence.   Id. at 62.

Although counsel could not recall this particular instance of reviewing the state's evidence, he attested that his regular practice is to ask to see all of the state's physical evidence. Id. at 70. He would have looked at the bloody clothing, the gun, and any other evidence. Id. But, Mr. Davis did not feel the bloody clothing was particularly relevant under the circumstances. Id.

Upon review of the trial transcript, Allen Miller of the Florida Department of Law Enforcement (FDLE) provided limited blood splatter testimony. He testified that the door was open when bloodshed occurred, leading him to conclude that the victim possibly passed through the open door. Ex. 5 at 375. Diane Hanson, FDLE, testified there was no blood found on the gun. Id. at 397. Joseph Strickland testified that when he saw Petitioner, he was wearing a nice shirt but it had blood all over it. Id. at 431. He further testified that Petitioner's knuckle was bleeding, and he was putting his hand on his shirt. Id. at 433. John Hatch testified that Petitioner grabbed the deceased by the shirt and pulled him out of the truck. Id. at 451, 521. Hatch also testified that Petitioner used the deceased's shirt to wipe the blood off of the steering wheel and off of the seat of the truck. Id. at 452. Hatch testified that, later on, both he and Petitioner lifted the deceased's body and put it back in the truck. Id. at 515.

The Court is not convinced that under these circumstances, counsel's performance was deficient for failing to contact additional experts.   Apparently, both Petitioner and his co-defendant handled or were in contact with the victim's bloody body. Petitioner wiped potential blood splatter evidence off of the steering wheel and the seat of the truck with the victim's shirt. The co-defendants changed their clothes and bathed prior to their arrests.  Also, Petitioner was actively bleeding after the offense and was placing his bleeding knuckle on his shirt.

This was not a situation where counsel could argue "that the small amount of blood found on [the defendant's] clothes made it unlikely that he had shot [the victim]." Riley v. Wainwright, 778 F.2d 1544, 1546 (11th Cir. 1985), cert. denied, 479 U.S. 871 (1986).   Instead, there was very significant testimony that Petitioner's shirt had blood all over it.  In addition, Petitioner handled the bloody body of the deceased.  This matter was also complicated by the fact that after the offense, Petitioner placed his bleeding knuckle on his shirt.  Of import, trial testimony revealed that Petitioner tampered with the blood splatter evidence by wiping the steering wheel and the seat, removing or smearing some of the potential blood splatter evidence.   Under these circumstances, defense counsel's decision not to obtain additional experts to buttress his case with regard to blood splatter "was

93

well within the 'range of professional competent assistance' and caused [Petitioner] no prejudice." Id. at 1549.

This Court must ask whether the state court's application of clearly established law (in this case as set forth in Strickland) was objectively unreasonable.  Petitioner urges this Court to find that there was an unreasonable determination of the facts in light of the evidence presented in the state court proceedings, that is, he seeks a finding that counsel's alleged failure to conduct an adequate investigation "tainted" Petitioner's trial.  Petition at 67.  Thus, Petitioner claims that counsel's performance was both unreasonable and prejudicial.  Id.

Respondents, in their Response, contend that Petitioner has failed to show that the circuit court's rejection of the ineffective assistance of counsel claim raised in ground five is contrary to, or an unreasonable application of clearly established law.  Response at 75.  Based on all of the above, the Court agrees that Petitioner has failed to make the requisite showing.  Also, Respondents assert that Petitioner has failed to show that the circuit court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Id.  Upon review, the Court finds that the circuit court did not make an unreasonable determination of the facts in light of the evidence presented to it.

Again, under the prejudice prong of Strickland, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[,]" i.e., "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; see Ferguson v. Sec'y for Dep't of Corr., 580 F.3d 1183, 1195 (11th Cir. 2009) (noting that there must be consideration of "the totality of the evidence to determine whether the petitioner was prejudiced by counsel's errors[]") (citation omitted)), cert. denied, 560 U.S. 949 (2010).  Considering the totality of the evidence, as this Court must, the Court concludes that Petitioner has failed to satisfy the prejudice prong of Strickland.

Petitioner is not entitled to habeas relief on ground five. There was no unreasonable application of clearly established law in the state court's decision to reject the Strickland ineffectiveness claim.  Indeed, the decisions of the state courts are entitled to deference under AEDPA.  The adjudications of the state courts resulted in decisions that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court.  Therefore, Petitioner is not entitled to relief on ground five of the Petition, the claim of ineffective assistance of trial counsel at the guilt phase, because the state courts' decisions were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established

federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

## F. Ground Six

**GROUND SIX:** Newly discovered evidence establishes that Petitioner's death sentence stands in violation of the Eighth Amendment to the United States Constitution, which prohibits the arbitrary or irrational imposition of the death penalty.

Respondents first address exhaustion and procedural default. They note that Petitioner did not raise the newly discovered evidence claim in his amended motion for post conviction relief. Response at 18.   He initially presented the newly discovered evidence claim during the evidentiary hearing when, over the state's objection, he offered the testimony of Michael Thompson. Id. at 18-19.   As a result, Respondents contend ground six is procedurally barred.   Id. at 22, 24-29.

Alternatively, Respondents contend that Petitioner altered this ground, now raising an Eighth Amendment comparatively disproportionate sentence claim instead of claiming that the newly discovered evidence shows that Hatch was the shooter, evidence which he asserted would have resulted in an acquittal.   Id. at 19-20.   Respondents note that Petitioner failed to raise the disproportionate sentence claim before the Florida Supreme Court. Id. at 19-20.   They assert the Eighth Amendment claim is not

96

actually exhausted and is procedurally bared.  Id. at 20 (citing
Coleman v. Thompson, 501 U.S. at 732).  Specifically, Respondents
assert that ground six is procedurally barred because (1) the
collateral court and the Florida Supreme Court found the newly
discovered evidence claim was untimely, and (2) the Eighth
Amendment disproportionate sentence claim was not presented to the
Florida Supreme Court.  Id. at 24-25.  Further, Respondents assert
that Petitioner has not overcome the procedural bar by showing
cause and prejudice or a fundamental miscarriage of justice.  Id.
at 25-27.

The record shows the following.  At the evidentiary hearing,
Petitioner called Michael Thompson to testify concerning newly
discovered evidence.  Ex. 32 at 13.  The state objected to the
testimony because it was offered as newly discovered evidence that
John Hatch perjured himself during trial and that claim was not
before the court.  Id. at 29.  Also, the state objected on the
basis that the evidence was discovered by Petitioner two years ago,
in early 2005, and was therefore time barred.  Id.  Petitioner's
counsel responded that it is a newly discovered evidence claim, and
he asked to the court to conform the pleadings to the evidence.
Id. at 30-31.  The court reserved ruling.  Id. at 31.  Upon review,
no mention was made of an Eighth Amendment claim at the evidentiary
hearing.  However, in the Written Closing Argument, under the
section labeled Newly Discovered Evidence: Inculpatory Statements

by David Hatch, Petitioner addresses the penalty phase of trial and seeks consideration of the "relative culpability and disparate sentencing" based on the argument that he was not the shooter.  Ex. 30 at 620.

In addressing the claim of newly discovered evidence, the circuit court addressed the newly discovered evidence standard:

> To be considered newly discovered evidence, it must meet the standard set forth in Torres-Arboleda v. Dugger, 636 So.2d 1321 (Fla. 1994).  The evidence "must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that the defendant or his counsel could not have known [of it] by the use of diligence." Jones v. State, 709 So.2d 512 (Fla. 1998) (quoting Torres-Arboleda v. Dugger, 636 So.2d 1321, 1324-25 (Fla. 1994.)) In Jones, the Florida Supreme Court stated that "newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial." Jones v. State, 591 So.2d 911, 915 (Fla. 1992).  To reach this conclusion the trial court is required to "consider all newly discovered evidence which would be admissible" at trial and then evaluate the "weight of both the newly discovered evidence and the evidence which was introduced at the trial." Id. at 916.  In revisiting the issue of newly discovered evidence, the Florida Supreme Court stated that:
>
>> the trial court should initially consider whether the evidence would have been admissible at trial or whether there would have been any evidentiary bars to its admissibility.  See Johnson v. Singletary, 647 So.2d 106, 110-11 (Fla. 1994); Bain v. State, 691 So.2d 508, 509 (Fla. 5th DCA 1997). Once this is determined, an

evaluation of the weight to be accorded the evidence includes whether the evidence goes to the merits of the case or whether it constitutes impeachment evidence. See Williamson v. Dugger, 651 So.2d 84, 89 (Fla. 1994). The trial court should also determine whether the evidence is cumulative to other evidence in the case. See State v. Spaziano, 692 So.2d 174, 177 (Fla. 1997); Williamson, 651 So.2d at 89. The trial court should further consider the materiality and relevance of the evidence and any inconsistencies in the newly discovered evidence.

Jones, 709 So.2d at 521-22.

Ex. 31 at 855-56.

The circuit court succinctly related the relevant testimony from the evidentiary hearing:

At the evidentiary hearing, the Defendant presented the testimony of Michael Thompson, an inmate and law clerk who helped the Defendant with his post-conviction "paperwork." (P.C. Vol. II at 15-17.) Thompson testified that before meeting the Defendant, Thompson had been housed at a different correctional facility with co-Defendant Hatch. (Id.) Thompson testified that a year after he became friends with Hatch, Hatch admitted that he was [the] one that shot the victim, Ronald Willis. (Id.) However, it was not until thirteen years later, in 2005, when Thompson was housed in the same correctional facility as the Defendant and started helping with his case, that Thompson realized the connection between Hatch and the Defendant. (P.C. Vol. II at 15-17, 22-24.) Thompson also testified that he was serving nine consecutive life sentences. (P.C. Vol. II at 17-18.)

Ex. 31 at 856-57.

The circuit court rejected the newly discovered evidence claim as untimely. _Id_. at 857. The court also held that Petitioner failed to establish the admissibility of the evidence. _Id_. (citation omitted). In addition, the court found that that the "testimony was not of such nature that it would probably produce an acquittal for the Defendant on retrial, especially in light of Thompson's credibility issues." _Id_. (citation omitted).

The Florida Supreme Court, on appeal of the circuit court's decision, concluded the claim was not timely filed. _Clark_, 35 So.3d at 892. It also determined that even assuming the claim was accepted as timely filed, Petitioner would not prevail:

> Clark cannot establish that the evidence, if presented at a new trial, would probably produce an acquittal. Thompson testified that Hatch admitted he shot someone after a drug deal gone bad, that Hatch had testified against Clark to save his own life, that the victim owed one of them money and had pulled a gun on them, and that Hatch had thrown the victim's body in the canal. Thompson did not testify regarding the name of the victim, the time of the murder, or any other information that would clearly exonerate Clark in the murder. The information alleged to have been provided by Hatch to Thompson does not create sufficient doubt that Hatch was the shooter instead of Clark.

_Id_.

Here, since the Florida courts rejected the claim as untimely filed, the claim is procedurally barred. The state court made a

plain statement that it was relying upon an independent state ground, untimeliness, in applying a procedural bar to the claim. Although the state court also addressed the merits of the claim, this Court "should apply the state procedural bar and decline to reach the merits of the claim." Marek v. Singletary, 62 F.3d 1295, 1301-1302 (11th Cir. 1995) (citation omitted), cert. denied, 519 U.S. 838 (1996).   See Fetrow, 2011 WL 3236034, at *4 (citing Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994) ("[W]here a state court has ruled in the alternative, addressing both the independent state procedural ground and the merits of the federal claim, the federal court should apply the state procedural bar and decline to reach the merits of the claim.")).

Therefore, based on the above, this Court should decline to reach the merits of ground six unless Petitioner can show cause and prejudice or that a fundamental miscarriage of justice may result. See Response at 25-26.   Petitioner, in an apparent attempt to show cause, asks the court to render a decision that the state must be estopped from relying on the collateral proceedings as erecting any procedural bars.   Reply at 35.   In response, the state urges this Court to find that ineffective assistance of post conviction counsel cannot constitute cause for overcoming the procedural bar. Response at 27-28.   As noted previously, attorney error in post conviction proceedings is not cause to excuse a procedural default, except in extremely limited circumstances, and those circumstances

are not present.  See Lambrix, 2014 WL 2884606, at *10.

Petitioner has not shown cause and prejudice, nor has he demonstrated that he meets the requirements for the fundamental miscarriage of justice exception.  Thus, the Court need not address the merits of ground six.

In the alternative, the Court will briefly address Petitioner's attempt to raise an Eighth Amendment claim. Petitioner, in his Reply at 36, states that the Respondents failed to address Petitioner's actual argument, that the Supreme Court of Florida failed to properly address the issue of whether the death sentence is disproportionate for the murder of Mr. Willis based on the assertion that Thompson's testimony would have impacted the jury and the trial court's analysis.

Of import, the Florida Supreme Court found that the information alleged to have been provided by Hatch to Thompson did not create sufficient doubt that Hatch was the shooter instead of Clark.  Clark, 35 So.3d at 892.  This finding is entitled to AEDPA deference.  Therefore, Thompson's testimony would not have provided the impact necessary to change either the jury or the trial court's analysis.  Furthermore, on direct appeal, the Florida Supreme Court decided that the death sentence was not disproportionate to other cases where the death penalty had been upheld.  Clark, 613 So.2d at 415.  Thus, Petitioner is not entitled to relief based on this argument.

To the extent Petitioner is raising a proportionality claim, Pulley v. Harris, 465 U.S. 37 (1984) is controlling.  "Pulley [an Eighth Amendment case] held that the Constitution does not require proportionality review of capital sentences."  Prejean v. Maggio, 765 F.2d 482, 484 (5th Cir. 1985) (citations omitted), cert. denied, 492 U.S. 925 (1989).  Thus, Petitioner is not entitled to relief on an Eighth Amendment proportionality claim.

Upon review, the case at bar does not present "the freakish imposition of capital punishment", nor does the proportionality review and the holding of the Florida Supreme Court "shock the conscience."  Moore v. Balkcom, 716 F.2d 1511, 1518 (11th Cir. 1983), cert. denied, 465 U.S. 1084 (1984).  There is apparent good faith in the proportionality review, and this Court should not inject itself into a state sentencing procedure.  The determination that Petitioner's death sentence was not disproportionate was neither contrary to, nor an unreasonable application of, federal law.  The decision made was not based upon an unreasonable determination of the facts.  Thus, AEDPA deference will be applied to this ground.

Finally, and in the alternative, with regard to the newly discovered evidence claim, the circuit court and the Florida Supreme Court both rejected this claim.  In its opinion, the Florida Supreme Court found that the record did not support Petitioner's claim that the evidence showed that Mr. Hatch was the

shooter and leader.  <u>Clark</u>, 35 So.3d at 888.   In addressing the newly discovered evidence claim, the Florida Supreme Court noted that the trial judge summarized the evidence presented against Petitioner, and the Florida Supreme Court reiterated that evidence in its opinion.  <u>Id</u>. at 892.  After doing so, the court concluded:

> At trial, Clark himself testified that Hatch was the shooter and that he was merely an accomplice to the crimes.  He also testified that Willis was a friend of his father and that he had no reason to shoot Willis.  However, Thompson's description of the crime is not consistent with Clark's own version.  Clark did not mention a drug deal or money.  Further, Thompson's testimony that Hatch said they dumped the body immediately after shooting Willis is not consistent with the evidence presented at trial.  Finally, Thompson is serving multiple sentences and would probably not serve as a credible witness at a new trial.  Accordingly, the postconviction court properly denied Clark's claim of newly discovered evidence.

<u>Id</u>. at 893.

Based on this ruling, Petitioner is not entitled to relief on ground six.  Deference under AEDPA should be given to the decisions of the state courts.  The adjudications of this claim are not contrary to or an unreasonable application of the law, or based on an unreasonable determination of the facts.  Therefore, ground six is due to be denied.

### G.  Ground Seven

**GROUND SEVEN:** Petitioner was denied the right to a fair and impartial judge during his postconviction proceedings, in violation

of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

Respondents contend that there is a procedural bar to this claim.  Response at 20-22, 29.  Although conceding that the issue was not raised on post conviction appeal, Petitioner submits that regardless of this failure, the claim should be heard.  Reply at 37.  For the same reasons as stated under ground four, this Court will liberally consider Petitioner's pro se pleadings submitted to the state court, see App. A, B, D, E, F, H, I, L, and find that Petitioner satisfied the fair presentation requirement.[33]

Petitioner claims that the collateral court judge, Judge Wiggins, should have granted Petitioner's motions to disqualify. Petitioner is not entitled to habeas relief on this ground. Failure of a collateral court judge to recuse himself is an attack on a proceeding collateral to the detention:

> In Spradley v. Dugger, we held that where a petitioner's claim goes to issues unrelated to the cause of petitioner's detention, that claim does not state a basis for habeas relief. 825 F.2d 1566, 1568 (11th Cir. 1987) (involving claims as to errors at a hearing on the petitioner's 3.850 motion); see also Nichols v. Scott, 69 F.3d 1255, 1275 (5th Cir.

---

[33] Alternatively, to the extent the holding in Hitchcock is inapplicable, this ground is procedurally defaulted.  See Response at 20-22, 29.  Petitioner has not shown cause or prejudice that would excuse any procedural default.  Likewise, he has not shown the applicability of the actual innocence exception.  Since Petitioner is unable to satisfy either of the exceptions to the procedural default bar, the Court finds ground seven is procedurally defaulted and barred from review.

1995) ("An attack on a state habeas proceeding
does not entitle the petitioner to habeas
relief in respect to his conviction, as it is
an attack on a proceeding collateral to the
detention and not the detention itself.")
(internal quotes omitted); <u>Franzen v.
Brinkman</u>, 877 F.2d 26, 26 (9th Cir. 1989)
(agreeing with the majority view and holding
that "a petition alleging errors in the state
post-conviction review process is not
addressable through habeas corpus
proceedings"). Therefore, while habeas relief
is available to address defects in a criminal
defendant's conviction and sentence, an
alleged defect in a collateral proceeding does
not state a basis for habeas relief. <u>See</u>
<u>Spradley</u>, 825 F.2d at 1568.

<u>Quince v. Crosby</u>, 360 F.3d 1259, 1261-62 (11th Cir.), <u>cert</u>. <u>denied</u>,

543 U.S. 960 (2004) (addressing the question of whether the failure

of the presiding judge at the 3.850 proceeding to recuse himself

deprived the petitioner of any constitutional right, and finding

that refusal to recuse is unrelated to petitioner's detention and

does not present a basis for habeas relief). Therefore, the claim

is not cognizable before this Court in a federal habeas proceeding.

Petitioner may be arguing that there was an actual deficiency

in the post conviction proceedings rendering it "not full and

fair." <u>Id</u>. at 1262. "Such a deficiency might deprive the state of

the presumption of correctness with respect to the findings of

[Judge Wiggins]." <u>Id</u>. (citations omitted). Here, the facts

alleged by Petitioner are not sufficient to undermine the

presumption of correctness. Indeed, the collateral proceedings

were not rendered unfair. In rendering this decision, the Court

looks to Petitioner's specific allegations in support of this ground.  Initially, Petitioner asserts that Judge Wiggins should have granted the motions to disqualify because no judge of the Fourth Judicial Circuit could be expected to be impartial because both Lance Day, one of the prosecutor's in the case, and trial counsel, Mr. Davis, became circuit court judges after the trial. Petition at 72; App. Z (pro se Motion for Disqualification of Judge, filed April 14, 2005).  As a result, Petitioner complains that Judge Wiggins had to sit in judgment of his colleagues' ethics.  Petition at 72.  As alleged evidence of Judge Wiggins' bias, Petitioner's references Wiggins' decision to allow the state access to confidential work product materials and Wiggins' failure to schedule a timely evidentiary hearing.  <u>Id</u>. at 73.

Upon review, Lance Day's actions or inactions were not at issue during the post conviction proceedings.  Although Mr. Day was a prosecutor during the trial, Howard Maltz was lead counsel. Also, Howard Maltz responded to the initial Rule 3.850 motion.  Ex. 28.  Thereafter, Meredith Charbula responded to the amended motion and represented the state at the evidentiary hearing and throughout the remainder of the post conviction process.  Mr. Davis (at the time of the evidentiary hearing, Judge Davis), testified at the evidentiary hearing, but Judge Wiggins' decision is well-supported by the evidence presented at the hearing.  Ex. 32 at 33-85.  The record reflects that Petitioner was afforded a full and fair

107

evidentiary hearing.  Id. at 6-162.  The court appointed counsel; Petitioner attended the hearing; his witnesses testified; the parties were allowed to submit written closing arguments, and they did so; and, after due consideration of the pleadings, evidence and written submissions, Judge Wiggins provided a reasoned and well-supported decision.  Petitioner has failed to show there was impartiality that jeopardized the image of the judicial system under these circumstances.

Again, Petitioner claims Judge Wiggins' bias is reflected in his failure to set an evidentiary hearing back in 1996.  App. D, Exhibit A, portion of June 18, 1996 Order.  Although Judge Wiggins said "Defendant shall be granted an evidentiary hearing[,]" the order did not actually set a hearing date.  Upon review, in response to this order, Petitioner's Capital Collateral Regional Counsel (CCRC) counsel did not request the setting of a hearing or notify the court that Petitioner was ready for an evidentiary hearing to be scheduled.  CCRC counsel may have elected not to seek the scheduling of an evidentiary hearing for a number of reasons, including Petitioner's mental state, as evidenced by Petitioner's requests to terminate all appeals and his scheduled psychiatric evaluations.  See Ex. 30 at 461-67.  Also, CCRC counsel may have employed delay tactics to avoid the execution of sentence or to allow Petitioner to become more mentally stable or less inclined to terminate all post conviction proceedings.  In addition, the record

108

shows numerous changes of post conviction counsel between the 1996 Order and the appointment of Mr. Brody as post conviction counsel, with some of the changes actually being sought out by Petitioner. Finally, the record shows that Mr. Brody filed a second amended motion for post conviction relief in 2006, Ex. 29, as requested in the first amended Rule 3.850 motion.  <u>See</u> Ex. 27, First Amended Motion to Vacate Judgments of Conviction and Sentence with Special Request for Leave to Amend and for Evidentiary Hearing.

In support of this ground, Petitioner also alleges that Judge Wiggins allowed the state access to confidential work product.  The state, in preparation of the post conviction proceeding, sought to review trial counsel's file as Petitioner placed Mr. Davis' representation at issue by claiming ineffective assistance of trial counsel.  The court granted state collateral counsel permission to review Petitioner's trial counsel's file.  <u>See</u> Response at 85 n.33. Although there was one box of materials which Mr. Westling (post conviction counsel) provided to Assistant Attorney General Charbula that contained CCRC material rather than trial counsel's file material, Ms. Charbula decided not to look at the materials in that particular box because they were apparently not part of trial counsel's file.  Ex. 30 at 499.

Upon review, Petitioner is not entitled to relief on this ground.  Petitioner waived the attorney-client privilege between himself and Mr. Davis and was obligated to disclose Davis' files to

the state.  See Reed, 593 F.3d at 1226 (upon petitioner's refusal to waive the attorney-client privilege and refusal to disclose trial counsel's files to the state, the Florida Supreme Court ordered trial counsel's files to be produced and an evidentiary hearing to be conducted on the claim of ineffective assistance of trial counsel).  Although post conviction counsel (apparently unintentionally) provided a box containing CCRC's file for review, Ms. Charbula refrained from looking at the documents in that box as she realized they did not constitute part of trial counsel's files. Response at 85 n.33.  Petitioner suggests that Ms. Charbula may have read some of these documents; however, he "has never identified any of these materials or pointed to any use of these materials in any proceeding to his detriment or to the State's benefit." Id.  Upon review, Petitioner has failed to show that he was denied a full and fair post conviction proceeding.  Therefore, Petitioner is not entitled to habeas relief on ground seven.

## IX. Conclusion

As stated herein, Petitioner's claims are due to be denied. Any claims not specifically addressed by this Court are found to be without merit.  Based on the reasons provided in the opinion, the Petition will be denied, and this case will be dismissed with prejudice.

## X. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Petitioner appeals and seeks a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted.  This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  See Slack, 529 U.S. at 484.  However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Id.

111

Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Petition for Writ of Habeas Corpus (Doc. 26) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3. If Petitioner appeals the denial of the Petition, the Court **denies** a certificate of appealability.

4. The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 14th day of August, 2014.

_____
BRIAN J. DAVIS
United States District Judge

sa 8/13
c:
Counsel of Record

112